1  GLYNN & FINLEY, LLP
   ADAM FRIEDENBERG, Bar No. 205778
2  ADAM M. RAPP, Bar No. 280824
   One Walnut Creek Center
3  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
4  Telephone:  (925) 210-2800
   Facsimile:  (925) 945-1975
5  Emails:     afriedenberg@glynnfinley.com
               arapp@glynnfinley.com
6
7  LAW OFFICE OF WILLIAM REILLY
   WILLIAM B. REILLY, Bar No. 177550
8  86 Molino Avenue
   Mill Valley, CA 94941-2621
9  Telephone:  (415) 225-6215
   Facsimile:  (415) 225-6215
10 Email:      bill@williambreilly.com

11 Attorneys for Plaintiffs

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 KIMBERLY CUSACK-ACOCELLA,
   an individual, SCOTT LANGER, an
16 individual, MICHAEL HENRY, an          )  Case No.
   individual, JANICE SMOTHERS, an        )
17 individual, and GRACE OUDIN, an        )  COMPLAINT FOR BREACH OF
   individual, on behalf of themselves    )  ERISA FIDUCIARY DUTIES AND
18 and on behalf of all others similarly  )  APPROPRIATE EQUITABLE
   situated,                              )  RELIEF
19                                        )
                                          )
20             Plaintiffs,                )
                                          )
21      vs.                               )
                                          )
22                                        )
   DUAL DIAGNOSIS TREATMENT               )
23 CENTER, INC., a California             )
   corporation doing business as         )
24 SOVEREIGN HEALTH, TONMOY               )
   SHARMA, an individual, KEVIN           )
25 GALLAGHER, an individual, DAVID        )
   TESSERS, an individual, and ALLIED     )
26 BENEFIT SYSTEMS, INC., an              )
   Illinois corporation,                 )
27                                        )
               Defendants.                )
28 _____)

COMPLAINT

## INTRODUCTION

1.     Plaintiffs are former employees of Defendant Dual Diagnosis Treatment Center, Inc. d/b/a Sovereign Health ("Sovereign").  Sovereign offered health benefits to its employees through a self-funded plan, the Sovereign Health Employee Benefits Plan (the "Plan").  Plaintiffs and other employees made monthly premium payments via regular payroll deductions made by Sovereign, which was responsible for funding the Plan and ensuring its ability to make payments for covered health benefits.  Sovereign, however, has ceased funding the Plan, which has therefore ceased paying covered claims for benefits.  On information and belief, Sovereign and its senior executives have failed to hold Plan assets, including but not limited to regular payroll deductions, in trust, as required, but instead have misappropriated and misused Plan assets.  As a result, Sovereign and certain of its executives have stolen Plaintiffs' wages and benefits and left them vulnerable to substantial financial liability to their medical providers, which the Plan was required to pay and/or reimburse for covered claims.

2.     Defendant Allied Benefit Systems, Inc. ("Allied") was the claims administrator for the Plan.  Allied was aware that Sovereign had ceased funding the Plan and ceased paying claims.  However, Allied did not notify Plaintiffs of this failure.  Instead, it made serial representations to Plaintiffs that the Plan had paid claims that had not been paid, and that Allied knew had not been paid.

3.     As a result of Defendants' breaches of their obligations, Plaintiffs have received collections notices from their doctors and other providers for amounts owed by the Plan for covered health benefits.  Neither Sovereign nor Allied contends that the unpaid amounts are not owed, or that the benefits at issue were not covered by the Plan—Sovereign simply refuses to fund the Plan as agreed, leaving Sovereign's current and former employees exposed to substantial financial liability.  Plaintiffs are informed and believe that covered claims in excess of $1.1 million remain unpaid.  This amount continues to grow, as covered claims

COMPLAINT

1  continue to go unpaid, unwitting employees continue to seek and obtain medical

2  treatment without knowledge that the health benefits for which they have paid will

3  not be provided, and existing employees continue to be falsely informed that

4  continued payroll deductions are being used to fund the Plan.

5  **JURISDICTION AND VENUE**

6  4.  This Court has subject matter jurisdiction under 29 U.S.C. §

7  1132(e)(1).

8  5.  The Court has personal jurisdiction over all defendants named herein,

9  as all reside and/or do business in California and this District or otherwise have

10  sufficient contacts with the forum, as detailed below.

11  6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and

12  29 U.S.C. § 1132(e), as a substantial part of the acts or omissions giving rise to the

13  claims alleged herein occurred within this District, the Plan is administered in this

14  District and/or a defendant resides or may be found within this District.

15  **THE PARTIES**

16  7.  Plaintiff Kimberly Cusack-Acocella is a former employee of

17  Sovereign, and was a participant in the Plan.  Ms. Cusack-Acocella is a resident of

18  Texas.  Ms. Cusack-Acocella is a Plan participant within the meaning of 29 U.S.C.

19  § 1002(7).

20  8.  Plaintiff Scott Langer is a former employee of Sovereign, and was a

21  participant in the Plan.  Mr. Langer is a resident of Massachusetts.  Mr. Langer is a

22  Plan participant within the meaning of 29 U.S.C. § 1002(7).

23  9.  Plaintiff Michael Henry is a former employee of Sovereign, and was a

24  participant in the Plan.  Mr. Henry is a resident of California.  Mr. Henry is a Plan

25  participant within the meaning of 29 U.S.C. § 1002(7).

26  10.  Plaintiff Janice Smothers is a former employee of Sovereign, and was

27  a participant in the Plan.  Ms. Smothers is a resident of Florida.  Ms. Smothers is a

28  Plan participant within the meaning of 29 U.S.C. § 1002(7).

11.     Plaintiff Grace Oudin is a former employee of Sovereign, and was a participant in the Plan.  Ms. Oudin is a resident of California.  Ms. Oudin is a Plan participant within the meaning of 29 U.S.C. § 1002(7).

12.     Sovereign is a California corporation with its principal place of business in San Clemente, California.  Sovereign is the Plan Administrator for the Plan, responsible for collecting monthly premiums and funding payments of all covered benefit claims made under the Plan, and is therefore a fiduciary with respect to the Plan under ERISA.

13.     Plaintiffs are informed and believe and thereon allege that Allied is an Illinois corporation with its principal place of business in Chicago, Illinois.  Allied is the Claims Administrator for the Plan, with authority to resolve and approve as covered all benefit claims made under the Plan.  On information and belief, Allied has responsibility to pay benefits due under the Plan and controls and disburses Plan assets, and is therefore a fiduciary under ERISA.

14.     Defendant Tonmoy Sharma is the Chief Executive Officer of Sovereign.  Plaintiffs are informed and believe and thereon allege that he is a resident of California.  Plaintiffs are further informed and believe and thereon allege that at all relevant times Mr. Sharma had and exercised control and authority over the Plan and its assets, and is therefore a fiduciary with respect to the Plan under ERISA.

15.     At all relevant times, Sovereign was the alter ego of Sharma.  A direct or indirect unity of interest and ownership existed between Sovereign, on the one hand, and Sharma on the other hand, such that adherence to the fiction of separate corporate existence would promote injustice under these circumstances.  The full extent of Sharma's influence and control over Sovereign is within the exclusive knowledge of Sharma.  Mr. Sharma's alter ego liability is based on, *inter alia*, the following factual allegations made on information and belief:

a.     Sharma exercises day-to-day control over all Sovereign business

1        activities;

2    b.    Sharma, directly or indirectly, owns a majority of outstanding

3          Sovereign stock;

4    c.    Sharma dominated and controlled the affairs of Sovereign, using it as

5          a mere conduit for his personal financial interests;

6    d.    Sharma disregarded the formal corporate existence of Sovereign by,

7          *inter alia*, paying for personal expenses unrelated to legitimate

8          corporate interests out of general corporate funds;

9    e.    Sharma commingled Sovereign corporate assets with his own personal

10         funds and diverted Sovereign's income and assets, as well as Plan

11         assets, without regard to the corporate form;

12   f.    Sharma personally benefitted from his disregard of Sovereign's

13         corporate form and repeated knowing misrepresentations to Sovereign

14         employees and Plan participants;

15   g.    Sharma was personally involved in Sovereign's decisions to divert

16         employee payroll deductions specifically earmarked as Plan assets and

17         to refuse to fund the Plan as required;

18   h.    Adherence to the fiction of separate corporate existence under the

19         circumstances would sanction fraud and result in injustice because

20         Sovereign's and Sharma's actions as detailed herein were undertaken

21         in bad faith with knowledge of the harm to Plan participants and

22         beneficiaries that was nearly certain to result.

23   16.   Defendant Kevin Gallagher is the Chief Financial Officer of

24 Sovereign.  Plaintiffs are informed and believe and thereon allege that he is a

25 resident of California.  Plaintiffs are further informed and believe and thereon

26 allege that at all relevant times Mr. Gallagher had and exercised control and

27 authority over Plan assets and is therefore a fiduciary with respect to the Plan under

28 ERISA.

17.     Defendant David Tessers is the Director of Finance of Sovereign. Plaintiffs are informed and believe and thereon allege that he is a resident of California.  Plaintiffs are further informed and believe and thereon allege that at all relevant times Mr. Tessers had and exercised control and authority over Plan assets and is therefore a fiduciary with respect to the Plan under ERISA.[1]

## GENERAL ALLEGATIONS

### Self-Funded Health Plans

18.     A self-funded health benefits plan is a form of self-insurance by which an employer uses its own funds to provide health benefits to employees. Rather than obtaining health insurance policies from an insurance carrier, the employer assumes direct responsibility for the cost of health benefits.  Self-funded plans are advantageous to employers, as they generally are less expensive than traditional health insurance.  In addition, the employer retains possession and control of the funds in trust that otherwise would be paid to an insurance carrier for traditional health insurance.

19.     Of course, by opting for a self-funded plan, the employer assumes certain obligations.  The employer must pay the cost of covered benefits claims under the self-funded health plan.  Where the cost of those claims exceeds the premiums paid by plan participants, it is the employer's obligation to make up the shortfall.

20.     In addition, ERISA requires that fiduciaries who manage plan assets act solely, exclusively, and prudently in the interests and for the benefit of the plan and plan participants.

### The Sovereign Health Employee Benefits Plan

21.     Sovereign offered health benefits to its employees, including Plaintiffs

---

[1] Defendants Sovereign, Sharma, Gallagher and Tessers are referred to collectively herein as the "Sovereign Defendants."  The Sovereign Defendants, the Plan and Allied are referred to collectively herein as "Defendants."

Kimberly Cusack-Acocella, Scott Langer, Michael Henry, Janice Smothers, and Grace Oudin (collectively "Plaintiffs"), through its self-funded Sovereign Health Employee Benefits Plan (the "Plan").  The Plan is an employee benefit plan within the meaning of Section 2(3) of ERISA, 29 U.S.C. §1002(3).

22.     Although Sovereign could have procured health insurance for its employees, it instead opted to implement a self-funded plan, as it was financially advantageous to the Company and its executives and owners.

23.     The Plan Documents state that "[t]he benefits provided under the terms of this Plan are purchased through Employer contributions.  At the discretion of the Company, Employees may be required to contribute on a payroll deduction basis."  On information and belief, Sovereign never undertook to make contributions to Plan assets from general corporate funds, but instead funded the Plan—when it funded the Plan at all—exclusively through employee payroll deductions earmarked as such.  Sovereign represented to its employees that through these premium payments the Plan would have sufficient funds to pay all claims for covered health benefits under the Plan.

24.     The Plan documents specifically identify Sovereign as the Plan sponsor and Named Fiduciary.

**Defendants Induced Plaintiffs to Participate in the Plan Through Various Representations**

25.     Plaintiffs could have opted not to participate in the Plan, but instead to purchase private insurance policies or otherwise secure health benefits. Defendants induced Plaintiffs, and other Sovereign employees, to participate in the Plan by representing that the Plan would fully and timely reimburse the cost of covered claims.  This was critically important to Plaintiffs.

26.     Ms. Cusack-Acocella, for example, is a cancer survivor and a single mother of two boys.  She and her children have substantial and routine medical expenses.  Sovereign promised Ms. Cusack-Acocella medical benefits as part of

1   her compensation, and that promise was material to her decision to accept

2   employment with Sovereign.  Had Defendants advised Ms. Cusack-Acocella at any

3   time that the Plan would not provide full payment of the benefits required by the

4   Plan, she would have opted out of the Plan and obtained alternative health

5   insurance.  Messrs. Langer and Henry, Ms. Smothers, and Ms. Oudin likewise

6   opted to participate in the Plan with the expectation that it would provide the

7   benefits required by the Plan documents.

8               **Sovereign Failed To Fund the Plan, and all Defendants**

9                    **Failed to Prudently Manage Plan Assets**

10       27.    Sovereign made regular payroll deductions from each Plaintiff for the

11   putative purpose of funding the Plan, in some cases in amounts of over $1,000 per

12   bi-weekly employee paycheck.  These were effectively the "premiums" for

13   participation in the Plan, and were represented as such.  Consequently, these

14   amounts were Plan assets that Defendants were obliged to hold in trust and

15   maintain and use for the benefit of the Plan.

16       28.    Pursuant to the Plan and the arrangement between Sovereign and

17   Allied, Sovereign was to establish a dedicated bank account with sufficient funds

18   to cover all necessary benefits payments under the Plan.  Sovereign was to fund

19   this account with the amounts deducted from employee paychecks and, to the

20   extent necessary, contribute sufficient additional funds to allow for full payment of

21   benefits.

22       29.    Allied had control of this account and authority to make

23   disbursements from the account.  As the claims administrator, Allied was

24   responsible for processing claims for health benefits, determining whether claims

25   were covered under the Plan and making payments.

26       30.    Plaintiffs are informed and believe and thereon allege that Sovereign

27   failed adequately to fund the Plan.  Instead, Sovereign retained the funds deducted

28   from its employee payroll.  Plaintiffs are informed and belief and thereon allege

1    that the Sovereign Defendants misused Plan assets, engaged in self-dealing

2    transactions by commingling plan assets with Sovereign's general accounts, and

3    failed to administer the Plan in the interests of Plan participants.

4         31.    In addition, Plaintiffs are informed and believe and thereon allege that

5    Defendant Sharma used Plan assets and other Sovereign funds for his own personal

6    use as detailed above.

7              **<u>Defendants Have Failed To Make Payments for Health Benefits</u>**

8                          **<u>As Required by the Plan</u>**

9         32.    Plaintiffs are informed and believe and thereon allege that in 2017,

10   Defendants ceased making any payments for covered claims under the Plan.

11   Sovereign, however, continued to make regular and routine payroll deductions

12   from its employees, identifying them as funds for the Plan.  The Sovereign

13   Defendants did not disclose to Plaintiffs or its other employees that it had failed to

14   adequately fund the Plan or that the Plan had ceased paying claims.  Consequently,

15   Plaintiffs and other employees continued to seek medical care and services with the

16   expectation that the costs of such care and services would be covered and paid for

17   as provided by the Plan.

18        33.    Plaintiffs are informed and believe and thereon allege that Allied was

19   aware that Sovereign had not adequately funded the Plan.  Allied was aware that

20   the Plan had ceased making payments for covered claims, as it was Allied's

21   responsibility to 1) determine whether claims were in fact covered and 2) pay the

22   covered claims.

23        34.    Allied at no time advised Plaintiffs or other Plan participants that

24   Defendants had ceased paying covered claims.  To the contrary, Allied routinely

25   communicated to Plaintiffs that the Plan had in fact paid claims that Allied knew

26   Defendants had not paid.  This induced Plaintiffs to continue to seek medical care

27   with the expectation that covered claims would be reimbursed.  Allied was at all

28   times aware of the funding shortfall, and consequent non-payment of covered

1   claims, as Allied had control of the (unfunded) account from which such payments
2   were to be made.

3       35.    As a result of Defendants' breaches of their fiduciary duties,
4   Defendants have failed to pay more than $1.1 million in covered medical claims
5   under the Plan.  Defendants do not dispute or deny that these claims are covered by
6   the Plan.  They simply have failed and refused to pay these covered claims.

7       36.    As a result, Plaintiffs have received collections and/or past-due
8   notices from multiple medical providers.

9       37.    Plaintiffs are informed and believe and thereon allege that
10  Defendants' failure to pay covered claims is ongoing, and thus the harm to
11  Plaintiffs and other Plan participants is continuing and increasing by the day.

12  **Defendants Have Failed to Notify Plan Participants of Their Failure to**
13  **Pay Claims, Leaving Them Vulnerable to Further Financial Liability**
14  **and Medical Insecurity**

15      38.    Plaintiffs are informed and believe and thereon allege that many
16  Sovereign employees remain unaware of Defendants' conduct.  For example, any
17  Plan participants who have not sought medical care or treatment in the time since
18  Defendants ceased making required payments for health benefits covered under the
19  Plan, would have no basis to know that Defendants have breached their fiduciary
20  duties and stopped making payments for covered health benefits under the Plan.
21  Such employees may seek medical care or treatment with the expectation that
22  covered benefits will be paid for consistent with the terms of the Plan.  Defendants
23  know that this is not the case, and that Defendants have failed to pay and continue
24  to fail to pay covered claims, but have provided no notice to Plan participants of
25  these facts.

26      39.    In addition, Plaintiffs and all other Plan participants have been
27  deprived of their premium payments without having received the promised health
28  benefits.  This applies equally to Plan participants who have had covered claims go

1  unpaid and to those who have not suffered unpaid claims.  Participants who have

2  not obtained medical services under the Plan in the period since Defendants ceased

3  paying covered claims have nonetheless been harmed, because they have been

4  compelled under false pretenses to pay for health coverage that Defendants were

5  not actually providing.  Defendants continued to confiscate and use for their own

6  benefit employee premium payments, without any intention of using those funds

7  for their stated purpose of providing health benefits under the Plan.

8  **CLASS ACTION ALLEGATIONS**

9  40.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of

10  Civil Procedure on behalf of a proposed class including all participants and former

11  participants in the Plan to the present day.

12  41.    Specifically excluded from the proposed class are Defendants Sharma,

13  Gallagher and Tessers.

14  42.    The claims set forth herein as properly maintained as a class action

15  under Federal Rule of Civil Procedure 23 because all elements of Rule 23(a) are

16  satisfied and one or more of the Rule 23(b) factors is satisfied.  Defendants have

17  acted or refused to act on grounds that apply generally to the class, such that

18  declaratory and injunctive relief is appropriate for the class as a whole, common

19  questions of law and fact predominate over any questions affecting only individual

20  class members, and a class action is superior to other available methods for fairly

21  and efficiently adjudicating the controversy.

22  43.    **Numerosity.**  The members of the class are so numerous that

23  individual joinder is impracticable.  Upon information and belief, Plaintiffs allege

24  that the proposed class contains at least 500 members.  The precise number and

25  identities of all class members is unknown to Plaintiffs, but is known to

26  Defendants.  Accordingly, it will be possible to notify the class of the pendency of

27  this action by mail, electronic mail, notice or otherwise.

28  / / /

44. **Commonality and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the proposed class, and these questions predominate over any individualized questions.  These common questions of law and fact including, but are not limited to, the following:

      a.      Whether Defendants breached their fiduciary duty by failing to pay covered claims under the Plan;

      b.      Whether Defendants breached their fiduciary duty by failing to discharge their duties with respect to the Plan solely in the interest of participants and beneficiaries, and for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan;

      c.      Whether Defendants breached their fiduciary duty by failing to ensure that Plan assets were prudently managed;

      d.      Whether Defendants breached their fiduciary duty by failing to notify Plan participants that Defendants had ceased paying covered claims;

      e.      Whether Defendants breached their fiduciary duty by misrepresenting to Plan participants that the Plan had paid amounts that Defendants knew had not been paid and for which no funds were available to pay;

      f.      Whether Defendants are Plan fiduciaries;

      g.      Whether Sovereign is the alter ego of Sharma;

      h.      Whether Defendants violated ERISA;

      i.      Whether Plaintiffs and the proposed class are entitled to declaratory, injunctive and/or other equitable relief, pursuant to ERISA or at common law, to remedy defendants' breaches of fiduciary duty, wrongful, unfair, and unlawful conduct as alleged herein, including without limitation an order requiring payment of all unpaid claims for covered health benefits and restoration to Plaintiffs and/or the Plan of all premium amounts deducted from Plaintiffs' paychecks during the relevant period.

45. **Typicality.**  Plaintiffs' claims are typical of the claims of the other proposed Class members, in that Defendants' breaches of their fiduciary duties impacted all Plan participants in the manner described above, including Plan participants whose claims have gone unpaid as well as Plan participants who have not yet suffered unpaid claims but who have had their wages deducted for Plan premium payments when no functional Plan existed.

46. **Adequacy of representation.**  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel experienced in complex litigation, including under ERISA, and Plaintiffs and their counsel intend vigorously to prosecute this action.  Plaintiffs and their counsel have no interests adverse to those of the other proposed Class members.

47. **Superiority.**  A class action is superior to individual actions for achieving fair and efficient adjudication of this controversy.  The financial and other detriment suffered by the Plan, the Plaintiffs and other members of the proposed class is relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendants.  Thus it would not be possible to redress effectively the misconduct described above through individual actions.  Further, individual actions would impose a greater burden on the Courts and all parties, as well as the risk of inconsistent judgments arising from the same or similar facts.  Class litigation provides for the efficient adjudication of common issues in a single proceeding, and there are issues of manageability that would preclude individual litigation.

48. Class certification is also appropriate because:

   a.   the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for Defendants;

   b.   the prosecution of separate actions by individual class members

1  would create a risk of adjudications with respect to them that would, as a practical

2  matter, be dispositive of the  interests of other class members not parties to the

3  adjudications, or substantially impair or impede their ability to protect their

4  interests; and

5          c.     Defendants have acted or refused to act on grounds generally

6  applicable to the class as a whole, thereby making appropriate final declaratory,

7  injunctive or other equitable relief with respect to the members of the class as a

8  whole.

9      49.    Alternatively, certain issues relating to Defendants' liability may be

10  certified pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure.

11          **FIRST CLAIM FOR RELIEF**

12       **Breach of Fiduciary Duty Against All Defendants**

13     **(ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2))**

14      50.    Plaintiffs incorporate and re-plead by this reference the allegations of

15  paragraphs 1 through 49, as though fully set forth herein.

16      51.    The Plan documents identify Sovereign as the Plan Administrator and

17  the Plan's Named Fiduciary.  In addition, the Sovereign Defendants and Allied

18  were responsible for making and did make discretionary decisions regarding,

19  among other things, Plan administration, the evaluation of whether benefits claims

20  were covered under the Plan, and the disbursement of Plan benefits and Plan

21  assets.  The Sovereign Defendants and Allied also had and exercised control over

22  Plan assets.  Accordingly, the Sovereign Defendants are and acted as fiduciaries of

23  the Plan.

24      52.    As fiduciaries of the Plan, the Sovereign Defendants and Allied had

25  the duties set forth in in ERISA section 404, 29 U.S.C. § 1104, including but not

26  limited to a duty of loyalty to the Plan and Plan participants, as well as duties not to

27  make misrepresentations to Plan participants; to discharge their duties solely in the

28  interests of Plan participants and their beneficiaries and for the exclusive purpose

of providing benefits to them or defraying reasonable expenses of administering the Plan; to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims; and to discharge their duties in accordance with the documents and instruments governing the Plan.

53.   Defendants breached their fiduciary duties by, among other things:

   a.   failing to pay covered claims under the Plan;

   b.   failing to ensure the Plan was adequately funded;

   c.   failing to ensure that Plan assets were prudently managed;

   d.   misappropriating and misusing Plan assets;

   e.   failing to notify Plan participants that Defendants had ceased paying covered claims; and

   f.   misrepresenting to Plan participants that the Plan had paid claims that Defendants knew had not been paid and for which no funds were available to pay.

54.   As a result of such breaches, Defendants have caused monetary loss to Plaintiffs and the Plan for which Defendants are individually liable.  Accordingly, Plaintiffs bring this action on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Plan.

## SECOND CLAIM FOR RELIEF

### For Equitable Relief Against All Defendants

### (ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3))

55.   Plaintiffs incorporate and re-plead by this reference the allegations of paragraphs 1 through 54, as though fully set forth herein.

56.   Plaintiffs are entitled to appropriate equitable relief to ensure the protection of their rights going forward, avoid continued malfeasance with respect to Plan assets, and prevent unjust enrichment of Defendants by virtue of their

1   conduct described above constituting breaches of fiduciary duties owed to Plan

2   participants and/or knowing participation in such breaches.

3       57.    In addition to the conduct described above, Plaintiffs are entitled to

4   appropriate equitable relief to redress Defendants' violations of, or knowing

5   participation in violations of, ERISA's prohibition on transactions set forth in

6   ERISA Section 406(a), 29 U.S.C. § 1106(a), through, at a minimum, the transfer of

7   plan assets to, use of plan assets by or for the benefit of parties in interest (as

8   defined by ERISA).

9                           **<u>PRAYER FOR RELIEF</u>**

10      WHEREFORE, Plaintiffs pray for relief as follows:

11  1.    For an order certifying the action as a class action under Rules

12         23(b)(2) and (b)(3);

13  2.    For an order appointing plaintiffs as class representatives and

14         plaintiffs' counsel as class counsel;

15  3.    For an order declaring that that Defendants violated the terms of the

16         Plan and the rights of Plaintiffs and the Class thereunder by a) failing

17         to pay the full amount of benefits due under the Plan; b) failing to

18         disclose to Plaintiffs and the Class that the Plan had ceased providing

19         payment of covered health benefits; c) failing to adequately and

20         prudently fund, manage and administer the Plan; d) failing to hold

21         Plan assets in trust; and e) misusing and misappropriating Plan assets.

22  4.    For an order requiring Defendants to pay all benefits due pursuant to

23         the terms of the Plan, including without limitation a) all approved

24         claims for which no payment has been made, and b) any interest or

25         penalties that have been suffered by Plaintiffs and the class as a result

26         of the Defendants' failure to make timely payments;

27  5.    For an order requiring Defendants restore to Plaintiffs and the

28         proposed class and/or the Plan premium contributions collected;

6.      For the equitable relief of surcharge, including the return of the financial benefits Defendants gained by breaching their fiduciary duties to Plaintiffs and the Class;

7.      For an order requiring that Defendants submit to an equitable accounting;

8.      For disgorgement of profits gained as a result of fiduciary breaches and/or interference and other conduct described herein;

9.      For equitable relief in the form of reappointment of an appropriately independent and loyal Plan Administrator to serve as Named Fiduciary in lieu of Sovereign;

10.     For the imposition of a constructive trust over all funds held by Defendants that properly constitute Plan assets;

11.     For interest on all sums awarded;

12.     For attorneys' fees and the costs of action in an amount the Court determines to be reasonable, pursuant to ERISA Section 502(g)(1), 29 U.S.C. §1132(g)(1), and to the extent otherwise provided by the Plan or by law;

13.     For such other and further relief as the Court deems just and proper.


Dated: June 7, 2018                         LAW OFFICE OF WILLIAM REILLY
                                            WILLIAM B. REILLY
                                            86 Molino Avenue
                                            Mill Valley, CA 94941-2621

                                            GLYNN & FINLEY, LLP
                                            ADAM FRIEDENBERG
                                            ADAM M. RAPP
                                            One Walnut Creek Center
                                            100 Pringle Avenue, Suite 500
                                            Walnut Creek, CA  94596


                                            By _____/s/ Adam Friedenberg_____
                                            Attorneys for Plaintiffs

- 16 -