UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Melissa Kunig | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

**[IN CHAMBERS] ORDER REGARDING MOTION TO STRIKE, MOTION FOR SUMMARY JUDGMENT, AND MOTION FOR CLASS CERTIFICATION**

Plaintiffs Kimberly Cusack-Acocella, Scott Langer, Michael Henry, Janice Smothers, and Grace Oudin all sued their former employer, Dual Diagnosis Treatment Center, Inc. (which does business as Sovereign Health) ("Sovereign"), along with three Sovereign executives, under the Employee Retirement Income Security Act ("ERISA"). On behalf of themselves and other Sovereign employees, Plaintiffs allege that Sovereign breached its fiduciary duties by failing to fully fund their Employee Health Benefit Plan ("the Plan") and misusing Plan assets. Plaintiffs also sued Allied Benefit Systems ("Allied") as the claims administrator of the Plan, alleging Allied knew about and concealed Sovereign's underfunding of the Plan.

Allied now moves for summary judgment. (*See* Mot. for Summ. J. ("MSJ"), Dkt. No. 184.) At the same time, Plaintiffs move to strike certain evidence relied on in Allied's motion. (*See* Mot. to Strike ("MTS"), Dkt. No. 190.) Plaintiffs also move, for the second time, to certify this case as a class action under Federal Rule of Civil Procedure 23. (*See generally* Mot. for Class Certification ("MCC"), Dkt. Nos. 111, 154.)

The Court GRANTS Plaintiffs' motion to strike. The Court DENIES Allied's motion for summary judgment. The Court GRANTS Plaintiffs' motion for class certification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

## 1.   BRIEF BACKGROUND

The substantive facts of this case have been recited several times in previous orders. (*See, e.g.,* Dismissal Orders, Dkt. Nos. 55, 78; Order Denying Class Certification, Dkt. No. 153; Order Granting Stay, Dkt. No. 187.) The Court refers to those orders for factual background.

## 2.   ALLIED'S MOTION FOR SUMMARY JUDGMENT

### 2.1   Motion to Strike Declaration of Steve Savanna

Plaintiffs move to strike the declaration of Steve Savanna, which Allied submits with its summary judgment motion, for hearsay and lack of personal knowledge. (*See* MTS at 1.)

Mr. Savanna states that his declaration is "based on [his] own personal knowledge as an officer of the company, and based on internal discussions [he] had with Allied key personnel about the subject matter." (Decl. of Steve Savanna ("Savanna Decl.", Dkt. No. 184-1 at ¶ 1.) Mr. Savanna's "discussions . . . with Allied key personnel" are clearly hearsay statements inadmissible to prove their truth. *See* Fed. R. Evid. 801(c), 802. Still, Allied argues Mr. Savanna's declaration is admissible because it isn't being offered for its truth. (*See* Opp'n to MTS, Dkt. No. 205 at 5.) This argument is unconvincing. For one, Allied doesn't say what, exactly, Mr. Savanna's declaration is being used for if not it's truth. Further, Allied's summary judgment motion relies extensively (and almost exclusively) on the truth of the statements contained in Mr. Savanna's declaration. So it's highly unlikely that it isn't being offered for its truth here. Consequently, to the extent Mr. Savanna's declaration relies on his hearsay discussions with Allied personnel, his declaration is inadmissible. But it's impossible to tell which portions of Mr. Savanna's declaration rely on hearsay, and which don't. So the Court finds Mr. Savanna's entire declaration must be stricken as inadmissible under Federal Rules of Evidence 801(c), 802, and 602.

There are other problems with Mr. Savanna's declaration too. Notably, the Court isn't convinced Mr. Savanna has personal knowledge about everything he declares in his declaration. *See* Fed. R. Evid. 602. Mr. Savanna asserts he has personal knowledge because of his "position and duties with Allied," which include "working with consultants and clients to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

implement and administer their self-funded medical group health plans." (Savanna Decl. at ¶ 1.) But Mr. Savanna's declaration isn't limited to describing things he personally experienced while performing his job duties. Instead, Mr. Savanna makes expansive statements about Allied's role in this case generally, including particular details about how the Plan operated. Mr. Savanna offers these statements without giving any specifics regarding how, exactly, he came to know this information. So the Court finds Mr. Savanna's declaration should be stricken for lack of personal knowledge as well.

The Court thus GRANTS Plaintiffs' motion to strike the declaration of Steve Savanna.

### 2.2   Other Evidentiary Objections

Besides Plaintiffs' motion to strike, both parties lodge many evidentiary objections to evidence relied on in each other's briefing. (*See generally* Allied's Evidentiary Objections, Dkt. No. 206; Plaintiffs' Evidentiary Objections, Dkt. No. 189.)

Where, as here, parties file numerous objections on a summary judgment motion, it's "often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *See Doe v. Starbucks, Inc.*, No. SACV 08-00582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). So instead of hashing out each parties' objections here, the Court notes the following. To the extent any of the objected-to evidence is relied on in this order, those objections are overruled. Any remaining objections are also overruled as moot. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections").

### 2.3   Legal Standard for Summary Judgment

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

*Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," based on the issue. *See id.* In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See Celotex*, 477 U.S. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies this initial requirement, the burden then shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

### 2.4   Analysis

#### 2.4.1   Arguments Concerning Allied's Role as an ERISA Fiduciary

Allied argues Plaintiffs' first two claims fail because those claims can only be asserted against an ERISA-defined fiduciary, which Allied is not. (*See* MSJ at 4-5.)

"A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial advisor." *Pegram v. Hedrich*, 530 U.S. 211, 222 (2000) (citing 29 U.S.C. §§ 1002(21)(A)(i)–(iii)). Relevant for our purposes, there are two key ways a third-party administrator like Allied can become an ERISA fiduciary. First, a third-party administrator is a fiduciary if it "exercises any discretionary authority or discretionary control respecting management of" a benefit plan. 29 U.S.C. § 1002(21)(A)(i). Second, an administrator is a fiduciary if it "exercises any authority or control respecting management or disposition of its assets." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

The Court is satisfied that Allied's activities as the Plan's third-party administrator fit these boxes. For one, Allied clearly exercised discretionary control over Plan assets. Allied had authority to write checks on a Plan account it created in its own name—an account that Sovereign wasn't authorized to make withdrawals from. (*See* Dep. of Frank Fay ("Fay Dep."), Dkt. No. 188-5 at 39:15-41:2.) Allied also controlled who was paid using Plan funds from that account, and in what order those payments were made. (Decl. of Adam Friedenberg ("Friedenberg Decl."), Dkt. No. 188-4 at Exhs. 11, 17, 18; Decl. of Michael Henry ("Henry Decl."), Dkt. No. 188-3 at ¶ 11.) The Ninth Circuit has concluded that this kind of discretionary control over Plan assets is enough to trigger fiduciary status under ERISA. (*See* Dismissal Order, Dkt. No. 78 at 4.) *See IT Corp. v. General Am. Life Ins.*, 107 F.3d 1415, 1420 (9th Cir. 1997) ("The right to write checks on plan funds is 'authority or control respecting management or disposition of its assets.'"). Just so here.

Besides Plan funds, Allied also exhibited discretionary control over Plan management, particularly concerning coverage determinations. According to Sovereign, "Allied made all the decisions as to whether, and to what extent, [medical] claims should be paid." (Friedenberg Decl. at Exh. 46.) Mr. Savanna partially admits this in his deposition testimony, acknowledging that "Allied's medical director and resources" were used in determining if medical services were medically necessary and thus covered by the Plan. (Dep. of Steve Savanna ("Savanna Dep."), Dkt. No. 188-6 at 384:13-20.) Allied also had discretion to interpret Plan terms and make the final call on questionable claims, like claims involving treatments that could be characterized as experimental, investigational, or unrelated to the diagnosis at issue. (Henry Decl. at ¶ 8; *see also* Friedenberg Decl. at Exh. 6.) This latitude concerning coverage determinations squares with the dominant role Allied played in the overall structure and day-to-day management of the Plan. (*See* Henry Decl. at ¶¶ 8-10 ("In practice, Allied was responsible for everything relating to the Plan.").)

Allied also had discretion over Plan management by controlling the content and subject of its communications with Plan participants. Allied was the key point of contact for Plan members regarding all aspects of the Plan. This is partly reflected in Plan documents and benefit cards, which directed Plan members to contact Allied with any Plan inquiries. (Friedenberg Decl. at Exh. 5.) These inquiries were in turn handled through Allied's call-center and Allied's online web portal, which Allied alone managed. (Savanna Dep. at 270:19-23; Henry Decl. at ¶ 8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

And Allied's communications with Plan members included both scripted and unscripted messages covering information such as claims made under the Plan, coverage and payments for those claims, the state of the Plan, and the likely future of Plan benefits. (*Id.*; Friedenberg Decl. at Exh. 4, 5; Stipulation, Dkt. No. 182; Savanna Dep. at 42:20-43:2.) All this tends to show Allied acted as an ERISA fiduciary here. *See Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (communicating with Plan participants regarding the likely future of Plan benefits is a fiduciary function).

But Allied insists it isn't a fiduciary because its role was "purely-ministerial" and thus lacked the requisite level of discretionary control. (MSJ at 5.) It's true that third-party administrators like Allied "are not fiduciaries under ERISA when they merely perform ministerial duties or process claims." *Kyle Railways, Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (citations omitted). This is because a third-party administrator who performs "ministerial duties" within the employer's framework of policies, interpretations, rules, practices, and procedures . . . does not have discretionary authority or discretionary control respecting the management of the plan." *IT Corp.*, 107 F.3d at 1420; *see also Gelardi v. Pertect Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985), overruled on other grounds, *Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011). But based on the evidence already discussed, it's clear Allied's role wasn't purely ministerial. Allied wasn't simply operating within a framework dictated by Sovereign when managing Plan assets or other aspects of the Plan. To the contrary, Allied appears to be the driving force behind almost all aspects of Plan management. (*See* Henry Decl. at ¶ 8 ("Allied drafted the Plan documents. Allied processed the claims. Allied decided whether submitted claims were covered or not covered. Allied handled all claims appeals. Allied controlled all communications with Plan participants.") The only meaningful evidence Allied points to supporting a different conclusion is Mr. Savanna's declaration, which has been stricken as inadmissible. Thus, as a matter of law, the Court finds Allied acted as an ERISA fiduciary here. None of the caselaw Allied cites in its moving papers convinces the Court otherwise.

So Allied is a fiduciary under ERISA, but even ERISA fiduciaries are only fiduciaries "to the extent" they exercised fiduciary functions. 29 U.S.C. § 1002(21)(A). Put differently, in "every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action* subject to complaint." *Pegram*, 530 at 226 (emphasis added). Based on this, Allied argues that, even if it was generally acting as a fiduciary under ERISA, Allied wasn't performing a fiduciary function regarding the conduct complained of here: Sovereign's failure to fund the Plan. (*See* MSJ at 8.)

The Court disagrees. Plaintiffs persuasively argue Allied used its discretionary control over Plan funds and Plan management to knowingly and significantly participate in perpetrating Sovereign's bad deeds. For example, Plaintiffs assert that "Allied misrepresented to Plan members that the Plan had paid claims it had not paid" and gave Plaintiffs the runaround when they asked about outstanding medical bills. (Opp'n to MSJ at 16-17.) This deprived Plan members of the opportunity to avoid incurring additional medical expenses that were supposed to be (but never were) funded by the Plan. (*See, e.g.*, Decl. of Scott Langer ("Langer Decl."), Dkt. No. 188-2 at ¶ 8.) And as already noted, Allied's highly discretionary communications with Plan participants, which included their purported misrepresentations and omissions, constituted a fiduciary function. So in this way Allied contributed to the Plan's underfunding while performing a fiduciary function.

But that's not the only way Allied contributed to the Plan's underfunding in a fiduciary capacity. When Plan funds began drying up, Allied prioritized its own interest over the interests of the Plan by "pa[ying] claims out of order for the sole purpose of making sure Allied got paid first." (Opp'n to MSJ at 16 (citing Friedenberg Decl. at Exhs. 11, 17, 18).) This, of course, was made possible by Allied's control over the outflow of Plan assets—a fiduciary function. And by paying itself first, Allied helped gut the Plan further. Consequently, the Court finds Allied was performing fiduciary functions regarding the actions underlying Plaintiffs' claims, and thus can be liable for fiduciary breach. *See Varity*, 516 U.S. at 506 (1996) (holding that participating "knowingly and significantly in deceiving a plan's beneficiaries . . . to save the employer money at the beneficiaries' expense" is itself a fiduciary act violating fiduciary duties). And again, the Court finds Allied's cited authority doesn't warrant a contrary conclusion.

In a nutshell, the Court finds Allied's actions as a third-party claims administrator exhibited sufficient discretion and control over Plan management to make Allied a fiduciary under 29

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

U.S.C. Section 1002(21)(A)(i). The Court also finds Allied was acting as a fiduciary concerning the conduct giving rise to Plaintiffs' claims. Accordingly, to the extent Allied argues summary judgment should be granted because of its contested status as an ERISA fiduciary, the Court denies Allied's motion.

### 2.5.2   Plaintiffs' First Claim for Relief

The Court moves on to Allied's more claim-specific arguments. Plaintiffs' first claim is for breach of fiduciary duty under 29 U.S.C. Section 1132(a)(2). Allied says this claim fails because Plaintiffs lack standing to assert it. (MSJ at 14.) Specifically, Allied contends that "[w]hile [P]laintiffs have standing in the sense that[,] as Plan participants[,] they are authorized to bring suit, they lack standing in the sense that claims under [Section] 1132(a)(2) may be made only for injury *to the Plan*." (*Id.* at 15 (emphasis added).) And because the "alleged wrongful conduct by Allied" here "did not injure the Plan," Allied insists Plaintiffs can't show standing. (*Id.*)

This argument is unpersuasive. Allied admits that "[t]he injury to the Plan was Sovereign's failure to timely and wholly fund the Plan." (MSJ at 16.) And Plaintiffs convincingly argue that Allied helped cause that injury by, among other things, failing to disclose, or avoid making misrepresentations about, the Plan's underfunding to Plan participants. (*See* Opp'n to MSJ at 19-21.) This in turn caused the Plan to incur additional obligations it had no ability to repay, increasing the Plan's debt and diminishing its value. Sure, this harmed Plan participants too. But that doesn't mean the Plan wasn't also injured by Allied's misconduct, which very well may have amounted to a fiduciary breach. *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) ("An 'ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits.'" (quoting *Acosta v. Pacific Enters.*, 950 F.2d 611, 619 (9th Cir. 1991))); *see also Varity*, 516 U.S. at 506 ("[D]eceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense" is a breach of fiduciary duty). Plaintiffs thus show standing to pursue their first claim for relief on behalf of the Plan.

Allied next argues Plaintiffs' first claim fails because Plaintiff can't show Allied breached any fiduciary duty. (MSJ at 17-21.) The Court rejects this argument. Plaintiffs submit enough evidence regarding Allied's alleged fiduciary breaches to survive summary judgment. And this is true for each of Plaintiffs' asserted bases for breach. (*See* Opp'n to MSJ at 20-25.) A few

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

examples follow. Plaintiffs say Allied committed breach through various misrepresentations and omissions to Plan beneficiaries. In support, Plaintiffs point to evidence establishing that Allied knew no later than March 2017 that Sovereign's failure to fund the Plan was "ugly." (Friedenberg Decl. at Exh. 22; *see also id.* at Exh. 33.) Despite this, Allied failed to give Plan participants complete and accurate information regarding the Plan's financial state. Instead, Allied chose to falsely represent that claims were being paid, and give Plan members the runaround when they asked why their medical bills were still outstanding. (*Id.* at Exhs. 10, 71; Henry Decl. at ¶ 15; Langer Decl. at ¶ 6.) This is sufficient to establish a claim for breach, at least for now, at the summary judgment stage. *See Barker*, 64 F.3d at 1403.

As another example, Plaintiffs contend Allied breached its fiduciary duties by failing to act prudently in managing and controlling Plan funds. (*See* Opp'n to MSJ at 23.) In support, Plaintiffs proffer evidence that Allied could've (and should've) implemented certain funding requirements for Sovereign when it became obvious that the Plan was in danger. (*Id.*) These requirements included mandating that Sovereign start overfunding the Plan, or allowing Allied to pull Plan funds directly from a Sovereign bank account. (*See* Henry Decl. at 12; *see also* Decl. of Randall J. Moon ("Moon Decl."), Dkt. No. 188-1 at ¶¶ 15, 24-25, 29.) But Plaintiffs assert Allied imprudently chose not to deploy these cautionary measures despite obvious need for such measures. Since ERISA imposes a duty on fiduciaries to act prudently when managing Plan funds, and since Plaintiffs sufficiently show Allied might've acted imprudently, Plaintiffs raise triable issues regarding breach on this basis, too. *See* 29 U.S.C. § 1104(a)(1)(B).

Still, Allied argues it's somehow immune from Plaintiffs' breach claim because it wasn't contractually responsible for funding the Plan. (*See* MSJ at 17 (arguing that liability only arises for a claims administrator once "the employer pays contributions into the Plan" because, at this point, the contributions become Plan assets giving rise to a fiduciary duty).) But the case Allied relies on to make this point doesn't seem applicable to the facts of this case. (*See id.* (citing *Glazing Health & Welfare Fund v. Lamek*, 896 F.3d 908 (9th Cir. 2018).) Notably, unlike the plaintiffs in *Glazing Health*, Plaintiffs here aren't arguing that the loss of Plan funds *made* Allied a fiduciary. Rather, Plaintiffs contend Allied's breaches while serving as a fiduciary *resulted* in losses to the Plan. And besides, "[i]n the ERISA context, the 'trust res' is the Fund, not just the plan assets." *In re Palombo*, 456 B.R. 48, 64 (Bankr. C.D. Cal. 2011) (citing 29 U.S.C. § 1102). So this argument is unavailing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

Nor is the Court convinced by the various cases Allied cites concerning whether it can be liable for failing to make certain disclosures to Plan participants. (MSJ at 19-20.) Allied uses these cases to assert that, as a third-party claims administrator, it was exempted from any "ERISA disclosure requirements" beyond those expressly proscribed by statute. (MSJ at 19-20 ("ERISA does not impose a duty to inform beyond the duties expressly stated in the statute. Sole responsibility for complying with ERISA disclosure requirements rests on the plan administrator.").) That might be true if Plaintiffs were claiming Allied breached its fiduciary disclosure responsibilities by failing to disclose routine plan documents, like those listed in 29 U.S.C. Section 1021. But Allied's alleged breach is much different. It arises from Allied's role as a Plan fiduciary, not from the failure to disclose basic items such as the summary plan document or explanation of benefits. Consequently, this argument fails too.

At bottom, Plaintiffs raise triable issues regarding all Allied's alleged fiduciary breaches. Thus, to the extent Allied's summary judgment motion seeks adjudication of Plaintiff's first claim for relief on this basis, Allied's motion is denied.

### 2.5.3   Plaintiffs' Second Claim for Relief

Plaintiffs' second claim for relief is for co-fiduciary liability under 29 U.S.C. Section 1105. Besides direct liability, ERISA holds any fiduciary liable for the breaches of co-fiduciaries of the same plan under certain circumstances. *See* 29 U.S.C. § 1105(a). Such circumstances include when a fiduciary knowingly participates in, conceals, or enables the breach of a co-fiduciary, or fails to take reasonable efforts to remedy the breach of a co-fiduciary despite knowing of the breach. *Id.* This section of ERISA "effectively imposes on every ERISA fiduciary an affirmative duty to prevent other fiduciaries from breaching their duties for which they are jointly and severally liable." *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1157 (9th Cir. 2000).

Allied argues Plaintiffs can't prevail on their co-fiduciary liability claim because, among other things, "Allied did not participate in or enable Sovereign's failure to fund the Plan." (MSJ at 22.) The Court disagrees. At the very least, Plaintiffs raise triable issues regarding whether Allied can be liable as a co-fiduciary under 29 U.S.C. Section 1105(a)(1) for knowingly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

participating in or concealing Sovereign's known fiduciary breaches. Plaintiffs point to evidence showing Allied knew Sovereign had stopped funding the Plan as early as March 2017, when Sovereign missed three monthly Plan payments in a row. (Savanna Dep. at 165:15-169:2.) Allied also knew Sovereign was continuing to collect payroll deductions from its employees despite repeatedly missing its Plan payments. (Friedenberg at Exh. 19; Savanna Dep. at 22:2-10.) And Allied knew Sovereign's behavior clearly amounted to a fiduciary breach. Indeed, Allied's General Counsel admitted as much. (*See* Friedenberg at Exh. 33.) Despite this knowledge, Allied falsely informed Plan participants their claims were being covered by the Plan, causing Plan members to continue incurring unfunded medical costs. (*Id.* at Exhs. 10, 71; Henry Decl. at ¶ 15; Langer Decl. at ¶ 6.) And by concealing the Plan's true financial state from Plan members, a reasonable factfinder could conclude Allied helped Sovereign getaway with underfunding the Plan a bit longer. Consequently, Plaintiffs prove triable issues exist regarding whether Allied knowingly participated in or concealed Sovereign's fiduciary breaches. *See* 29 U.S.C. § 1105(a)(1). Plaintiffs claim for co-fiduciary liability against Allied thus survives summary judgment.

### 2.5.4  Plaintiffs' Third Claim for Relief

Plaintiffs' third claim seeks equitable relief under 29 U.S.C. Section 1132(a)(3). Allied argues this claim fails for lack of standing. (MSJ at 24.) Specifically, Allied says Plaintiffs lack standing because "other portions of ERISA's civil enforcement scheme" provides Plaintiffs an adequate monetary remedy for Allied's alleged misconduct. (*Id.* at 24-25.)

Not so. Plaintiffs seek equitable relief to compel performance of Plan obligations and wind down the Plan, among other things. (*See* Opp'n to MSJ at 27.) Plaintiffs aren't simply requesting disgorgement of profits, or some other form equitable relief that is, at its core, a request for money damages. Thus, money alone won't make Plaintiffs whole, and equitable relief is necessary and appropriate here. *Cf. Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993) (denying equitable relief under ERISA where "what petitioners . . . seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties"). The Court therefore finds Plaintiffs have standing to seek equitable relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

Finally, Allied contends that the specific form of equitable relief requested is either not available or not appropriate, causing Plaintiffs' third claim to fail. (MSJ at 29.) But the only authority Allied cites to support this contention is an Eighth Circuit case that doesn't address the kind of equitable relief sought here. *See Pichoff v. QHG of Springdale, Inc.*, 556 F.3d 728 (8th Cir. 2009). So the Court isn't convinced by this argument, either.

Allied's remaining points mostly rehash its earlier arguments concerning causation and its status as an ERISA fiduciary. (MSJ at 26-28.) Because the Court already rejected these arguments, it need not address them a second time here.

The Court DENIES Allied's motion for summary judgment. Because the Court resolved this motion in Plaintiffs' favor without needing further discovery, Plaintiffs' request for additional discovery under Rule 56(d) is denied as moot.

## 3.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs ask the Court to certify the following class:

> All Plan Participants (including all covered employees and covered dependents) in the 2017 Sovereign Health Employee Benefits Plan (the "Plan") other than Tonmoy Sharma, Kevin Gallagher or David Tessers whose benefits claims Defendant Allied Benefit Systems, Inc. ("Allied") either a) determined were covered under the Plan, but did not pay, or b) did not process or make a coverage determination.

(Supp'l MCC, Dkt. No. 154 at 2.)

### 3.1    Legal Standard

The class action is an exception to the way litigation usually goes: typically, lawsuits are litigated just by the individually named parties. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). This exception is only justified if certain requirements are met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

First, a plaintiff seeking class certify action must show that the proposed class satisfies the four elements of Federal Rule of Civil Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation by the class representatives and class counsel. Fed. R. Civ. P. 23(a). All these elements must be satisfied for a class to be certified.

Second, the proposed classes must satisfy one of the three subsections of Rule 23(b). In this case, Plaintiffs seek to certify their proposed class under Rule 23(b)(1) or, alternatively, under Rule 23(b)(2) or 23(b)(3). (Supp'l MCC at 5.) Rule 23(b)(1) requires that "prosecuting separate actions by or against individual class members would create a risk of" either:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interest of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S. Ct. at 2551. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.* The party seeking class certification bears the burden of showing that the requirements of Rule 23(a) and (b) are met. *See Marlo v. U.P.S.*, 639 F.3d 942, 947 (9th Cir. 2011). A district court should certify a class only if the court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). If the court is not satisfied, then certification should be refused. *Falcon*, 457 U.S. at 161.

"Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551. But "Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification [is] proper." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Dukes*, 131 S. Ct. at 2552 n.6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

### 3.2    Class Definition

The Court denied Plaintiffs' first motion for class certification because Plaintiffs' proposed class was too broad. (*See generally* Order Denying Class Certification, Dkt. No. 154.) But Plaintiffs' new proposed class cures the problems discussed in the Court's prior order. Namely, Plaintiffs' revised class adds limiting language that narrows the class to Plan participants that either submitted covered claims that weren't paid, or submitted claims that weren't properly processed. (*Cf. id.* at 4 (proposing a class encompassing "all participants in the 2017 Sovereign Health Employee Benefits Plan.").)

But Allied insists Plaintiffs' proposed class is still fatally overbroad. (Allied's Supp'l Opp'n to MCC, Dkt. No. 163 at 1-10.) Allied spills much ink in making this argument. But at its core, this argument is really about the sufficiency of Plaintiffs' individual theories for liability. Essentially, Allied argues that because these theories fail on their merits, Plaintiffs' proposed class must be impermissibly overbroad. This argument makes little sense given that, at the class certification stage, full adjudication of Plaintiffs' claims isn't appropriate. And in any case, these arguments mirror the merits-based arguments in Allied's summary judgment motion, which were unconvincing. Accordingly, the Court accepts Plaintiffs' proposed class definition and rejects Allied's argument that it's still overbroad.

### 3.3    Standing

Defendants argue Plaintiffs lack standing to represent their proposed class. (*Id.*) Again, these arguments mostly mirror arguments made in Allied's summary judgment motion, which the Court rejected.

The only new argument Allied advances concerning standing is that "[P]laintiffs may not assert their claim for co-fiduciary liability . . . on behalf of the [P]lan." (*Id.* at 10.) As Plaintiffs point out, this argument is directly contrary to the statutory text of ERISA, which clearly allows for co-fiduciary claims in this context. (*See* Supp'l MCC at 12.) *See also* 29 U.S.C. 1132, 1109(a), 1105. The Court thus finds Plaintiffs have standing to pursue their claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

### 3.4     Rule 23(a)

Having resolved the threshold issues concerning class definition and standing, the Court turns to the requirements of Rule 23(a).

#### 3.4.1   Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A proposed class of at least forty members may satisfy the numerosity requirement. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds by *County of Los Angeles v. Jordan*, 459 U.S. 810 (1982).

Because Plaintiffs' proposed class encompasses hundreds of Plan participants, numerosity is clearly satisfied. (*See* Supp'l MCC at 3.) Allied's argument that the proposed class isn't sufficiently numerous is essentially a merits-based argument about when it first learned Sovereign stopped funding the Plan. (*See* Opp'n to Supp'l MCC at 11.) Again, fully adjudicating this issue now wouldn't be appropriate at this stage. And in any case, the Court has already considered and rejected this same argument in deciding Allied's summary judgment motion. The Court thus finds the numerosity requirement of Rule 23(a)(1) met here.

#### 3.4.3   Commonality

Rule 23(a)(2) requires that "there are questions of law and fact common to the class." The common questions must be capable of class-wide resolution. *Dukes*, 564 U.S. at 350. But "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 359.)

Plaintiffs state in broad terms several questions that are common to their proposed class. These include whether Defendants are Plan fiduciaries under ERISA, and whether Defendants breached their fiduciary duties. (MCC at 8-9.) This latter question can be further subdivided into other, more specific common questions that focus on the manner of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

Defendants' alleged breaches. (*Id.*) And because Plaintiffs bring their claims on behalf of the Plan rather than on behalf of the individual Plan participants, these questions generate common answers capable of resolving this case on a classwide basis. (*Id.* at 9 ("Plaintiff[s] are not seeking to recover individual awards, but rather seek to enforce Defendants' obligations to the Plan so that the Plan may in turn pay its obligations on covered claims.").) Indeed, determining whether Defendants breached their fiduciary duties hinges on their actions (or inactions) relating to Plan funding and management, and therefore doesn't depend on individualized inquiries of class members. That's enough to satisfy Rule 23(a)(2).

### 3.4.3   Typicality

The "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs' claims stem from the harm caused to the Plan due to Defendants' coextensive misconduct. Specifically, Plaintiffs claim the Plan was injured by Sovereign's failure to fund the Plan and misappropriation of Plan assets, and by Allied's concealment of, participation in, and failure to remedy those and other fiduciary breaches. This is true regardless of whether Allied made affirmative misrepresentations to fewer than all Plaintiffs. Why? Because Allied's disclosure responsibilities as an ERISA fiduciary purportedly required Allied to do more than simply avoid making false statements. Allied may also have been required to apprise Plaintiffs of the Plan's dwindling financial state. *See Barker*, 64 F.3d at 1403. The typicality requirement of Rule 23(a)(3) is thus satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

### 3.5.4  Adequacy

As the proposed class representatives, Plaintiffs must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To assess Plaintiffs' ability in this regard, the Court must answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Aside from the potential conflict addressed below, the Court isn't aware of any conflict between Plaintiffs and the proposed class members. And the record doesn't suggest any antagonism between the named Plaintiffs and absent class members. Also, because Plaintiffs seek to recover for the benefit of the Plan as a whole, all class members share an interest in maximizing recovery of Plan assets. Further, Plaintiffs' continued interest in the litigation is apparent from their desire to assure payment of outstanding benefits claims, as well as their ongoing participation in the discovery process. As for Plaintiffs' and counsel's willingness to vigorously prosecute this action on behalf of the class, the Court has no doubt. The Court knows only too well how actively this case has been litigated on both sides from its inception. Indeed, Plaintiffs' counsel has now defended two motions to dismiss, one motion to stay, and one motion for summary judgment. Plaintiffs' counsel has also brought several of its own motions, including various discovery motions, a motion for a preliminary injunction, and two class certification motions.

Still, Allied argues Plaintiffs aren't adequate representatives of absent class members because, as "high-ranking" Sovereign employees, Plaintiffs might've contributed to the conduct they now say violates ERISA. (Allied's Opp'n to MCC at 18-19.) Sovereign shares this concern. (Sovereign's Opp'n to MCC, Dkt. No. 127 at 6.) The Court disagrees. Plaintiffs' claims concern the actions of Plan fiduciaries, which Plaintiffs are not. Nor were Plaintiffs involved in the core conduct underlying Plaintiffs claims—namely, the manipulation of Plan assets and concealment of Plan underfunding. So the fact Plaintiffs might've helped establish the Plan doesn't preclude a finding of adequacy here. To the contrary, Plaintiffs' interests are very

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|----------|-------------------------|------|-----------------|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

much aligned with those of the absent class members since, as Plan participants, they suffered the same harm resulting from the same conduct by the same entities. The test for adequacy under Rule 23(a)(4) is therefore met.

Plaintiffs have met their burden regarding all four prerequisites of Rule 23(a). The Court now turns to the requirements of Rule 23(b)(1).

### 3.5     Rule 23(b)(1)

"Most ERISA class action cases are certified under Rule 23(b)(1)." *In re First American Corp. ERISA Litigation*, 258 F.R.D. 610, 620 (C.D. Cal. 2009) (citing cases). While Rule 23(b)(1)(A) "considers possible prejudice to a defendant," Rule 23(b)(1)(B) "looks to prejudice to the putative class members." *Kanawi v. Bechtel Corp*, 254 F.R.D. 102, 111 (N.D. Cal. 2008).  Class actions are permitted under Rule 23(b)(1)(B) "only if separate actions inescapably will alter the substance of the rights of others having similar claims." *McDonnell-Douglas Corp. v. U.S. Dist. Court for Central Dist. of California*, 523 F.2d 1083, 1086 (9th Cir. 1975) (internal quotations omitted).

The Court finds Rule 23(b)(1)(B) satisfied here. Plaintiffs aren't seeking individualized damage awards based on their individual unpaid or unprocessed benefits claims. Rather, Plaintiffs seek to enforce Defendants' fiduciary obligations to the Plan, including compelling Defendants to properly fund the Plan and process claims according to Plan terms. Stated differently, Plaintiffs seek collective relief for damage to *the Plan*. Accordingly, because "[t]he relief which Plaintiffs seek from Defendants would inure to the Plan as a whole[,]" it's impossible for individual class members to separately adjudicate their claims without substantially impairing the interests of the rest of the class. *In re Syncor ERISA Litigation*, 227 F.R.D. 227, 346 (C.D. Cal. 2005). Indeed, "if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan." *Id.*; *see also Marshall v. Northrop Grumman Corp.*, No. CV 16-06794-AB (JCx), 2017 WL 6888281, at *9 (C.D. Cal. Nov. 2, 2017) ("Because the issue is the *Plan*'s damages, the determination must be the same for every participant and beneficiary, and forcing the class members to adjudicate individually poses a significant risk of inconsistent judgment.")  Accordingly, certification under Rule 23(b)(1)(B) is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

But Allied argues Plaintiffs' proposed class can't be certified under Rule 23(b)(1)(B) because, at least in the context of a self-funded benefits plan, "an action on behalf of the plan . . . will have no direct effect on other participants in the plan." (Opp'n to Supp'l MCC at 20.) Perhaps that would be true if this was simply an action to recover individual benefits improperly denied under the Plan. But it's not. In fact, the precise amount owed by the Plan to class members remains unknown since Defendants stopped processing and paying for claims submitted by class members. Thus, it would be impossible for Plaintiffs to individually seek recovery for amounts owed to them under the Plan. Consequently, Plaintiffs' sought-after relief is largely equitable, and is aimed at restoring the Plan to its proper function so the Plan can make good on its obligations—obligations that Plaintiffs have now become personally liable for. (*See* Supp'l Reply to MCC, Dkt. No. 169 at 15.) For that reason, Plaintiffs' requested relief must necessarily be determined at once on a classwide basis so as to avoid risking broad injunctions impairing the interests of non-parties.

None of the cases Allied cites in its opposition papers warrants a different conclusion. Allied principally relies on *In re First American Corp. ERISA Litig.*, 258 F.R.D. 610 (C.D. Cal. 2009) and *In re Computer Sciences Corp.*, 2008 WL 7527874 (C.D. Cal. 2008) to argue that certification under Rule 21(b)(1)(B) isn't proper. But those cases are different than this case in an important way. Both *First American* and *Computer Sciences* involved claims for money damages inuring directly to the individual Plan participants, who maintained individual accounts with the benefits plan at issue. This is true even though the actions in those cases were technically brought on behalf of the Plan. Thus, unlike this case, the plaintiffs' claims in *First American* and *Computer Sciences* were capable of individual adjudication without substantially impeding the interests of non-parties. Consequently, those cases aren't dispositive of certification here. The Court thus finds Plaintiffs' proposed class may be properly certified under Rule 23(b)(1)(B).

### 3.6    The Individual Sovereign Defendants

Sovereign argues class certification should be denied as to the individual Sovereign Defendants because Plaintiffs' claims against these Defendants are "uncertain" and "not suitable for class treatment." (Sovereign's Opp'n to MCC at 10.) Sovereign doesn't ground

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|---|---|---|---|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

this argument in case law or the specific requirements of Rule 23. Instead, Sovereign leaves it to the Court to determine how, exactly, this point factors in to the class certification analysis. Though this alone justifies rejecting Sovereign's argument, Sovereign's argument fails on its merits, too. Plaintiffs have adequately alleged and shown that each of the individual Sovereign Defendants was an ERISA fiduciary owing duties to the Plan that might've been breached here. (*See* Reply to MCC, Dkt. No. 23 at 22-23.) Sovereign thus fails to convince the Court there's a legitimate basis in fact or law for treating these Defendants differently for class certification purposes.

The Court thus GRANTS Plaintiffs' motion for class certification.

### 3.7    Appointment of Class Counsel

Plaintiffs ask the Court to appoint as class counsel: Glynn & Finley, LLP, and the Law Office of William B. Reilly. (MCC at 12.) In appointing class counsel, the Court considers (1) the work done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1).

Class counsel is amply qualified to litigate this case. They have extensive experience handling class actions and other complex litigation, including actions arising under ERISA. (MCC at 13.) The declaration submitted with Plaintiffs' class certification motion further confirms this finding, which Defendants don't dispute. (*See generally* Friedenberg Decl., Dkt. No. 111-1.) But the most compelling evidence of the qualifications and dedication of proposed class counsel is their work in this case. Considering how far this action has come despite the parties' discovery disputes, and Defendants' voluminous and almost invariably simultaneous motions, proposed class counsel have made strong showing of their commitment to helping the class vigorously prosecute this case. The Court is satisfied that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The Court thus APPOINTS Glynn & Finley, LLP and the Law Office of William B. Reilly as class counsel in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-01009 AG (KESx) | Date | October 7, 2019 |
|----------|-------------------------|------|-----------------|
| Title | KIMBERLY CUSACK-ACOCELLA ET AL. V. DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL. | | |

## 4.    DISPOSITION

The Court GRANTS Plaintiffs' motion to strike. The Court DENIES Allied's motion for summary judgment. The Court GRANTS Plaintiffs' motion for class certification.

Any arguments not addressed in this lengthy order either weren't convincing or need not be addressed at this time.

|  | : | 0 |
|--|---|---|
| Initials of Preparer | mku | |