1   GLYNN & FINLEY, LLP
    ADAM FRIEDENBERG, Bar No. 205778
2   JONATHAN A. ELDREDGE, Bar No. 238559
    ADAM M. RAPP, Bar No. 280824
3   One Walnut Creek Center
    100 Pringle Avenue, Suite 500
4   Walnut Creek, CA 94596
    Telephone:  (925) 210-2800
5   Facsimile:  (925) 945-1975
    Emails:     afriedenberg@glynnfinley.com
6               jeldredge@glynnfinley.com
                arapp@glynnfinley.com
7

8   LAW OFFICE OF WILLIAM REILLY
    WILLIAM B. REILLY, Bar No. 177550
9   86 Molino Avenue
    Mill Valley, CA 94941-2621
10  Telephone:  (415) 225-6215
    Facsimile:  (415) 225-6215
11  Email:      bill@williambreilly.com

12  Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15  KIMBERLY CUSACK-ACOCELLA,  )   **Case No.** 8:18-cv-01009-ODW-KES
    an individual, SCOTT LANGER, an  )
16  individual, MICHAEL HENRY, an  )   **PLAINTIFFS' MOTION FOR**
    individual, JANICE SMOTHERS, an  )   **PRELIMINARY APPROVAL OF**
17  individual, and GRACE OUDIN, an  )   **CLASS ACTION SETTLEMENT**
    individual, KASSI NYE, an individual,  )
18  and LISE STEPHENS, an individual,  )   Date:       March 9, 2020
    on behalf of themselves and on behalf  )   Time:       1:30 p.m.
19  of all others similarly situated,  )   Crtrm:      5D
                                       )   Judge:      Hon. Otis D. Wright II
20              Plaintiffs,  )
                             )   **Accompanying Documents:**
21      vs.  )
             )       1) **Declaration of Adam**
22           )          **Friedenberg (with exhibits)**
    DUAL DIAGNOSIS TREATMENT  )
23  CENTER, INC., a California  )       2) **[Proposed] Notice of**
    corporation doing business as  )          **Settlement**
24  SOVEREIGN HEALTH, TONMOY  )
    SHARMA, an individual, KEVIN  )
25  GALLAGHER, an individual, DAVID  )
    TESSERS, an individual, and ALLIED  )
26  BENEFIT SYSTEMS, INC., an  )
    Illinois corporation,  )
27                         )
                Defendants.  )
28  _____  )

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2  **PLEASE TAKE NOTICE** that on March 9, 2020, at 1:30 p.m., or as soon

3  thereafter as the matter may be heard, in Courtroom 5D of the United States

4  District Court for the Central District of California, First Street Courthouse, located

5  at 350 W. 1st Street, Los Angeles, CA. 90012, Plaintiffs will bring on for hearing

6  this Motion for Preliminary Approval of Settlement.

7  Plaintiffs' motion is brought on the grounds that the settlement is within the

8  range of possible approval as it was the product of serious arm's-length negotiation

9  and provides fair, adequate and reasonable relief to the class and the parties have

10  agreed to an adequate method of providing notice to the Class.  The Motion is

11  based on this Notice, the accompanying Memorandum of Points and Authorities

12  and Declaration of Adam Friedenberg, the proposed form of class notice submitted

13  herewith, the pleadings and other records on file in this case, and such other

14  evidence and oral argument as the Court may consider.

15  This motion is made following the conference of counsel pursuant to L.R. 7-

16  3 which took place during the week of February 3, 2020.

17  Dated: February 10, 2020          GLYNN & FINLEY, LLP

18

19  By ____/s/ Adam Friedenberg____
      Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

After almost two years of hard-fought litigation, the parties have negotiated a settlement that delivers 100 percent relief to the class.  This is not hyperbole.  Under the terms of the settlement, Defendants are required to process and pay unpaid benefits claims exactly as the subject ERISA benefits plan (the "Plan") required.

Defendants' payment obligations are not contingent on a claims process or application by class members.  Class members are not required to take any action at all.  And class counsel are not taking a penny from the recovery.  Defendants will separately pay counsel's attorneys' fees and costs either by subsequent agreement or upon the Court's determination of the appropriate amount.

The class has not compromised its claims at all.  Plan members will receive what the Plan terms require.  Their substantial, long-overdue health claims will be paid, and class members who protected themselves in the interim by making out-of-pocket payments will be reimbursed.  In full.  By any measure, the settlement is fair, reasonable and adequate.

**II.   FACTUAL BACKGROUND**

**A.   Plaintiffs' Claims**

Plaintiffs are former employees of Defendant Dual Diagnosis Treatment Center, Inc. dba Sovereign Health ("Sovereign") and former participants in the 2017 Sovereign Health Employee Benefits Plan (the "Plan").  (Dkt. No. 60 ¶ 1.)  Defendants Tonmoy Sharma, Kevin Gallagher and David Tessers were Sovereign officers and Plan fiduciaries under ERISA.  (*Id.* ¶¶ 17-20.)  Defendant Allied Benefits Systems, Inc., was the third-party administrator for the Plan and it too was an ERISA fiduciary.  (*Id.* ¶ 16; *see also* Dkt. No. 233 at 6.)

Sovereign was required to fund the Plan through a combination of Sovereign and employee contributions (made through biweekly payroll deductions).  (Dkt.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   No. 111-3 at Ex. A at 51.)  Sovereign made the payroll deductions from Plaintiffs,
2   but kept the money for itself and also failed to make the required employer
3   contributions to the Plan.  (Dkt. No. 60 ¶¶ 33.)  As a result, the Plan lacked
4   sufficient funds to pay covered claims, and didn't pay them.  (*Id.* ¶¶ 35.)  Plaintiffs
5   alleged that Allied aided, directly participated in, concealed, enabled, and took no
6   reasonable efforts to remedy this conduct.  (*Id.* ¶¶ 37-38, 70.)

7        By this action, Plaintiffs sought to 1) recover for the benefit of the Plan
8   sufficient funds to satisfy covered claims the Plan had failed to pay, and 2) obtain
9   injunctive relief to compel Defendants to pay such claims consistent with the terms
10  of the Plan.  (Dkt. No. 60.)  As will be detailed below, the settlement fully achieves
11  both objectives.

12       **B.    The Litigation**

13       Plaintiffs and their counsel diligently litigated this case, and Defendants
14  vigorously defended it.  After serial motion practice by the defense, the parties
15  mediated in April 2018 before Keith Parker, Esq., which mediation was
16  unsuccessful.  (Dkt. No. 158.)

17       On August 23, 2019, the Court issued a 21-page tentative ruling certifying
18  the class and finding, among other things, that Allied was a fiduciary under
19  ERISA; the Court later adopted that tentative ruling as its order.  (Dkt. No. 233.)
20  On September 18, 2019, the parties participated in a settlement conference before
21  Magistrate Judge Scott.  (Dkt. No. 220.)  The case did not resolve, but Judge Scott
22  persisted.  Following a mediator's proposal by Judge Scott, Plaintiffs, Sovereign,
23  and Sharma agreed to principal settlement terms on September 27, 2019, which
24  were placed on the record.  (Declaration of Adam Friedenberg ("Friedenberg
25  Decl.") ¶ 7.)  The parties thereafter entered a written settlement agreement.  (*Id.*
26  Ex. D.)  Plaintiffs later settled with the remaining defendants, Gallagher and
27  Tessers, in a written agreement dated October 17, 2019.  (*Id.* ¶¶ 9-10, Ex. E.)
28  *///*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## C.    The Proposed Settlement

There are three categories of claims that went unpaid as a result of the Plan's underfunding.  First, Allied processed certain claims and determined they were covered, but didn't pay them due to Sovereign's failure to turn over Plan funds (the "Processed-Unpaid Claims").  Second, there were claims that Allied never processed at all, because it stopped performing its fiduciary duties when Sovereign stopped funding the Plan (the "Unprocessed-Unpaid Claims").  Third, certain Plan members made out-of-pocket payments to resolve covered claims that providers directly billed to the Plan members after the Plan failed to pay them (the "Out-of-Pocket Payments").  The settlement provides for resolution of all these claims as follows.

- Allied will pay the covered Processed-Unpaid Claims in accordance with the Plan, and notify the Plan members of such payments.  (Friedenberg Decl., Ex. D § 3.1.)

- Allied will process the Unprocessed-Unpaid Claims, and pay the covered amounts per the Plan.  (*Id.* §§ 3.1, 3.2.)  If Allied determines that a claim is not covered under the terms of the Plan, Allied will provide written notice of the denial and the reasons for the denial by mail to the Plan member whose claim was denied at the member's last known address.  (*Id.* § 3.5.)

- Allied will reimburse Out-of-Pocket Payments.  Class members will not be required to make claims for reimbursement in order to qualify for reimbursement.  (*Id.* § 3.6.)  Instead, Allied will determine the reimbursement amounts by contacting the medical providers.  (*Id.*)  But, Allied's reimbursement obligation is not contingent.  All Out-of-Pocket Payments are subject to reimbursement.  (*Id.*)

- Allied will pay any late fees, lost network discounts or other amounts necessitated by the delay in claims processing and payment.  (*Id.* § 3.2.)

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1    This obligation applies equally to each of the categories of claims

2    described above.  (*Id.* §§ 3.2, 3.6.)

3    • Class members are **not** waiving or releasing their right to challenge

4       coverage determinations under the Plan and ERISA.  (*Id.* § 6.2.)  If a

5       Class member believes that any of the foregoing reimbursements are

6       inadequate or inconsistent with the Plan, he or she retains the right to

7       pursue remedies for improper denial of benefits.  (*Id.*)  The class will

8       release only the claims alleged in this suit, and is not providing a general

9       release.  (*Id.* §§ 1.1, 6.1.)

10   • For both the Processed-Unpaid Claims and the Unprocessed-Unpaid

11      Claims, Allied will have the option of paying the covered claims in full

12      or paying (through negotiation or otherwise) a lower amount that the

13      payee accepts as payment in full.  (*Id.* § 3.4.)  In other words, Allied may

14      attempt to negotiate lowered payment rates, so long as that does not

15      result in an out-of-pocket expense to the Plan members that is greater

16      than the Plan provides.  Obviously, this flexibility necessarily does not

17      extend to the Out-of-Pocket Payments, which are already fixed due to

18      their payment by Plan members.  (*Id.* § 3.6.)

19   • The named Plaintiffs may apply for incentive payments not to exceed

20      $5,000 per Plaintiff.  (*Id.* § 3.10.)

21   • The parties will attempt to negotiate Class Counsel's attorneys' fees.

22      (*Id.*)  If the parties fail to reach agreement, counsel will bring a motion

23      under ERISA 29 U.S.C. § 1132(g)(1), which provides for the prevailing

24      Plaintiffs to recover attorney' fees and costs.  But this is not a common-

25      fund settlement, so any fees that are agreed or awarded will cause no

26      reduction or other impact on the Defendants' obligation to satisfy the

27      covered Plan benefits.

28   ///

- All Defendants are jointly and severally liable for all financial obligations to the Class. (*Id.* § 3.1; *Id.*, Ex. E at § 2.1.)

So the settlement is a complete win for the Class. Allied will fully satisfy claims to the extent required by the Plan, including any late fees or other costs caused by the delayed payment of claims. In the event of any default by Allied, the other defendants will be a backstop.

## III.   LEGAL STANDARD

"The claims . . . of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate. . . ." Fed. R. Civ. P. 23(e)(2). In making such a finding, the Court must consider whether

  (A) the class representatives and class counsel have adequately represented the class;

  (B) the proposal was negotiated at arm's length;

  (C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

*Id.*

[A]t the preliminary approval stage, "a court determines whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." *True*, 749 F. Supp. 2d at 1063; *see also* 4 W. Rubenstein, Newberg on Class Actions § 13:10 (5th ed.)

- 5 -

1   (the primary objective a court at the preliminary approval stage is "to
2   establish whether to direct notice of the proposed settlement to the class,
    invite the class's reaction, and schedule a final fairness hearing.") A "full
3   fairness analysis is unnecessary." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652,
    665 (E.D. Cal. 2008). The "settlement need only be *potentially* fair." *Acosta*
4   *v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in
    original). If the proposed settlement "appears to be the product of serious,
5   informed, non-collusive negotiations, has no obvious deficiencies, does not
    improperly grant preferential treatment to class representatives or segments
6   of the class, and falls within the range of possible approval," the court
    should grant preliminary approval of the class and direct notice of the
7   proposed settlement to the class. *In re Tableware Antitrust Litig.*, 484 F.
    Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).
8
9   At any rate, "the decision to approve or reject a settlement is committed to
    the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.
10  Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill.,*
    *LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (omission and
11  quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955
    F.2d 1268, 1276 (9th Cir. 1992).
12
13  *Glover v. City of Laguna Beach*, No. SACV 15-01332 AG (DFMx), 2018 WL

14  6131601, at *2–3 (C.D. Cal. July 18, 2018) (Guilford, J.).

15  **IV.   ARGUMENT**

16      **A.   The Settlement Is Within the Range of Possible Approval**

17          **1.   Serious Arm's-Length Negotiations**

18      There is no doubt that the settlement is the product of serious arm's-length

19  negotiations.  Plaintiffs' counsel made serious and persistent efforts to resolve this

20  case from very early on.  (Friedenberg Decl. ¶¶ 2-3, 6-7.)  Those efforts were

21  unsuccessful, as was a court-ordered mediation that occurred in April 2018.  (Dkt.

22  No. 158.)  Following the Court's tentative rulings on Plaintiffs' motion to certify

23  the class and Allied's motion for summary judgment, Plaintiffs requested, and the

24  parties participated in, a settlement conference before Magistrate Judge Scott,

25  which also was unsuccessful.  (Dkt. No. 220.)  But Judge Scott persisted, and the

26  case resolved.  (Dkt. No. 227.)

27      That the discussions were at arm's length is likewise clear.  Class counsel

28  advanced substantial out-of-pocket expenses, and invested thousands hours of

- 6 -

1   attorney time.  (*Id.* ¶ 5.)  Plaintiffs took substantial discovery, engaged a qualified

2   expert witness, and pursued numerous (successful) discovery motions to ensure

3   they obtained all necessary information.  (*Id*. ¶¶ 4-5.)  The most critical (and only

4   productive) settlement negotiations occurred after the Court certified the class and

5   denied Allied's motion for summary judgment.  (*Id.* ¶ 7.)  And after Plaintiffs

6   reached agreement with Allied, Sovereign and Sharma, they continued to negotiate

7   with Defendants Gallagher and Tessers, reaching a second agreement that imposes

8   further joint and several liability.  (*Id.* ¶ 10 & Ex. E.)  Plaintiffs' counsel were able

9   to place this final piece of the puzzle by putting their own compensation at risk—

10  i.e., by agreeing that Gallagher and Tessers may retain the right to argue that they

11  should not be jointly and severally liable for any award of attorneys' fees and

12  costs.  (*Id.* Ex. E at § 3.2.)

13          The treatment of Class counsel's fees and costs underscores the arm's-length

14  nature of the settlement.  Defendants have not agreed to pay any amount at all.

15  The parties will return to Judge Scott to attempt to negotiate Class counsel's fees.

16  (Friedenberg Decl. Ex. D at § 3.10.)  If that negotiation is unsuccessful, counsel

17  will receive whatever amount the Court determines to be reasonable.  (*Id.*)

18  Moreover, although Defendants have not yet agreed to pay any amount, Plaintiffs'

19  counsel nonetheless agreed to cap their fee request (as to Allied, Sovereign and

20  Sharma) at $1.75 million,[1] which is less than counsel's actual time spent on the

21  matter.  (*Id.* ¶ 8.)  And whatever amount is agreed or awarded will be separately

22  paid by Defendants, not satisfied from settlement funds.

23              **2.    Fairness, Reasonableness and Appropriateness**

24          As the settlement was "the product of arms-length negotiations between

25  experienced and well-informed counsel. . . .  [a] 'strong presumption of fairness'

26  . . . attaches to the [s]ettlement."  *de Rommerswael on Behalf of Puma*

27  ───────────────

28  [1] The settlement with Gallagher and Tessers imposes no such cap.  Of course, neither
    agreement constrains the Court's authority to award any reasonable amount.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   *Biotechnology, Inc. v. Auerbach*, No. SACV 18-00236 AG (JCGx), 2018 WL

2   6003560, at *3 (C.D. Cal. Nov. 5, 2018) (Guilford, J.).  This settlement speaks for

3   itself.  The litigation aimed to compel Defendants to process and pay all covered

4   claims under the Plan.  The proposed settlement achieves exactly that.  All Class

5   members are treated equally, and the payment of their claims is not contingent on a

6   claims process.  Defendants must process and pay all covered claims without

7   further action from class members, and regardless of whether class members have

8   any awareness of the settlement or even the suit itself.

9        The only departures from the Plan terms are:  (1) Defendants, and not Plan

10   participants, are responsible for late fees, lost network discounts, and other costs

11   occasioned by the breaches alleged here; and (2) Allied may attempt to negotiate

12   lower payment rates with the medical providers and other Plan creditors.  But that

13   benefit to Allied comes at no cost to the Class, because Allied may pay discounted

14   rates only if the providers agree to accept them as full satisfaction of what is owed.

15   (Friedenberg Decl. Ex. D at § 3.4.)  Defendants will also bear the cost of providing

16   notice to the Class.  (*Id*. § 4.2.)  And, as shown above, Defendants will pay

17   whatever attorneys' fees, litigation costs and incentive payments the Court awards,

18   without any impact to the funds available to resolve medical claims.

19        So the settlement is a total win for the class.  All outstanding covered claims

20   will be satisfied, and the total payout is uncapped.  In verified discovery responses,

21   Allied identified total covered claims of $495,226.15, and another $1,877,230.49

22   in unprocessed claims.  (Friedenberg Decl. ¶ 11, Ex. F at Responses to

23   Interrogatories 13, 14.)  Moreover, these amounts do not even include the late fees,

24   lost network discounts and any other amounts that may have become due since the

25   Plan stopped functioning in 2017.  And by achieving this outcome via settlement

26   rather than trial, the payment of claims is hastened, and the risk of appeal (and the

27   theoretical risk of less than full recovery at trial) is avoided.  There can be no

28   reasonable dispute that the proposed outcome is fair, reasonable and appropriate.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**B.     The Proposed Notice Plan Is Adequate.**

The proposed class notice submitted herewith provides, in plain English, a detailed description of the settlement terms, explains how the settlement will be implemented, describes the agreed procedure for incentive payments and attorneys' fees, provides class counsel's contact information so that class members may make inquiries and indicates the time and place for the final approval hearing. *See* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C (Class Actions), §10:824 (citing Manual for Complex Litigation, Third, § 30.212; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); other citations omitted).  Per the terms of the settlement agreement, Allied will mail the notice to each Class member at his or her last known address.[2] (Friedenberg Decl. Ex. D § 4.2.)  Should Allied learn of a change of address, Allied will send notice to the new address.  (*Id.*)  And Defendants will bear the cost of Class notice—again, with no impact to the funds available for Class benefits.

Plaintiffs are aware that legal counsel for the United States Department of Labor is aware of and has been monitoring this litigation, and that the Department of Labor apparently has assisted various former Sovereign employees. (Friedenberg Decl. ¶ 12.)  Accordingly, Plaintiffs' counsel will additionally provide a copy of the Class notice and an update regarding the settlement to the monitoring counsel at the Department of Labor.  (*Id*.)  This should provide an additional means of facilitating effective notice.

Plaintiffs are mindful of the recent Ninth Circuit case, *Roes, 1-2 v. SFBSC Mgt., LLC*, 944 F.3d 1035 (9th Cir. 2019), in which the Court found that mail-only notice was not sufficient under the circumstances of that case.  *Id.* at 1045-46.  But, we note that *Murphy* involved a common-fund settlement, before class

---

[2] When Plan members originally submitted their claim forms for medical benefits to Allied, they provided their contact information.  Allied will use that contact information to provide notice to the Plan members.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   certification, in which class members were required to make claims, with

2   unclaimed funds reverting to defendants.  *See id.* at 1042.  The Court found mail-

3   only notice was insufficient in large part because of the low claims rate.  *Id.* at

4   1046-47.  Those concerns are not present here:  Defendants are required to satisfy

5   100 percent of the class claims, regardless of whether class members have any

6   awareness at all of the settlement.  There is no claims process, because Defendants'

7   obligation to pay claims is absolute, and not dependent on claims.  And if Allied

8   determines that certain claims are not covered, class members retain the right to

9   challenge such determinations under ERISA and the Plan terms.  So Plaintiffs

10  submit the proposed notice plan is reasonable under the circumstances of the

11  present case.

12  **V.     REQUESTED DISPOSITION**

13          For the foregoing reasons, Plaintiffs request the Court preliminarily approve

14  the settlement and further order that:

15          1)     Allied shall mail the class notice, and Plaintiffs shall provide it to the

16                 United States Department of Labor, no later than March 20, 2020;

17          2)     Plaintiffs shall file a motion for final approval of the proposed

18                 settlement no later than April 30, 2020;

19          3)     The final fairness hearing will be held on May 11, 2020.

20

21

22  Dated: February 10, 2020

                                            GLYNN & FINLEY, LLP

23

24                                          By ____/s/ Adam Friedenberg____

25                                              Attorneys for Plaintiffs

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT