O

# United States District Court
# Central District of California

| | |
|---|---|
| KIMBERLY CUSACK-ACOCELLA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DUAL DIAGNOSIS TREATMENT CENTER, INC., et al., <br><br> Defendants. | Case No. 8:18-cv-01009-ODW (KESx) <br><br> **ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS [266]** |

## I. INTRODUCTION

Following the Court's final approval of a class settlement, Plaintiffs Kimberly Cusack-Acocella, Scott Langer, Michael Henry, Janice Smothers, Grace Oudin, Kassi Nye, and Lise Stephens move for an award of attorneys' fees, costs, and incentive awards against Defendants Allied Benefit Systems ("Allied"), Dual Diagnosis Treatment Center, Inc. (aka "Sovereign"), Tonmoy Sharma, Kevin Gallagher, and David Tessers. (Mot. Atty. Fees ("Motion" or "Mot."), ECF No. 266.) Sovereign, Sharma, Gallagher, and Tessers (together, the "Sovereign Defendants") jointly oppose. (Sovereign Opp'n, ECF No. 269.) Allied also opposes. (Allied Opp'n, ECF No. 270.)

The matter is fully briefed. (*See* Mot.; Sovereign Opp'n; Allied Opp'n; Reply, ECF No. 276.) For the following reasons, Plaintiffs' Motion is **GRANTED in part**.[1]

## II. BACKGROUND[2]

Plaintiffs brought this class action against their employer Sovereign, three Sovereign executives (Sharma, Gallagher, and Tessers), and Allied. (*See* First Am. Compl., ECF No. 60.) Essentially, Plaintiffs alleged the Sovereign Defendants breached fiduciary duties by failing to fund Sovereign's Employee Health Benefit Plan ("Plan") and by misusing Plan assets. Plaintiffs also sued the Plan administrator, Allied, alleging that Allied knew about and concealed the underfunding of the Plan. (*Id.*) The parties litigated this matter for over two years. The litigation consisted of two rounds of motions to dismiss, a preliminary injunction which resulted in the freezing of Sovereign's assets, two rounds of motions for class certification, a motion for summary judgment, and a motion for a temporary stay, not to mention numerous discovery motions and multiple attempts at mediation. (*See* Prelim. Approval Order 2–3.)

In September 2019, in a settlement conference before Magistrate Judge Karen Scott, Plaintiffs reached a settlement agreement with Allied, Sovereign, and Sharma on the record. (*Id.* at 3; Min. of Further Settlement Conf., ECF No. 227.) That agreement was eventually memorialized in writing (the "First Settlement Agreement" or "FSA"). (*See* Decl. of Adam Friedenberg ISO Mot. ("Friedenberg Decl.") ¶ 86, ECF No. 266-4; Friedenberg Decl. Exs., Ex. 22 ("FSA"), ECF No. 266-5.) Under the FSA, Allied agreed to fully resolve class members' outstanding benefits claims and to reimburse all class members who made out-of-pocket payments to resolve claims the Plan had failed to pay. (Friedenberg Decl. ¶ 80; FSA §§ 3.1, 3.2, 3.6.) Sovereign and Sharma agreed

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The facts of this case have been recited several times in previous orders. (*See, e.g.*, Dismissal Orders, ECF Nos. 55, 78; Order Denying Class Certification, ECF No. 153; Order Granting Stay, ECF No. 187; Order re Mot. to Strike, Mot. for Summ. J., & Mot. for Class Certification ("Order re MSJ & Class Cert."), ECF No. 233; Order Granting Prelim. Approval of Class Action Settlement ("Prelim. Approval Order"), ECF No. 262.) The Court incorporates those recitations by reference.

to be jointly and severally liable for Allied's payments, and they separately agreed to fully indemnify Allied. (FSA § 3.11; *see also* Stipulated Cross-Judgment, ECF No. 263.)

Because Gallagher and Tessers would not agree to joint and several liability for attorneys' fees, they did not join the FSA. (Decl. of Russell G. Petti ("Petti Decl.") ¶¶ 49–51, ECF No. 269-1.) Thus, Plaintiffs "conduct[ed] further trial preparation, attend[ed] the pretrial conference, and otherwise prepare[d] for trial at significant cost." (Mot. 12; Friedenberg Decl. ¶ 83.) Then, Plaintiffs did reach a settlement agreement with Gallagher and Tessers (the "Second Settlement Agreement" or "SSA"). (Friedenberg Decl. ¶ 83; Friedenberg Decl. Exs., Ex. 23 ("SSA").) Under the SSA, Gallagher and Tessers agreed to secondary liability for payment of claims under the Plan in the event Allied, Sovereign, and Sharma defaulted. (SSA §§ 2.1, 2.3.) They did not agree to any liability for attorneys' fees or costs. (*Id.* § 3.2.)

Under both the FSA and SSA, the parties agreed to participate in a settlement conference before Judge Scott to try to negotiate the amount of attorneys' fees and costs Plaintiffs might obtain. (FSA § 3.10; SSA § 3.1.) Both agreements also contemplate that Plaintiffs would file a motion for attorneys' fees if such negotiation was unsuccessful. (FSA § 3.10; SSA § 3.1.) In the FSA, Plaintiffs agreed their request for fees would not exceed $1.75 million, and their request for incentive awards for each named Plaintiff would not exceed $5,000. (FSA § 3.10.) The FSA makes clear it "does not address [Plaintiffs'] costs (other than attorneys' fees) incurred in litigating the [a]ction, and thus Plaintiffs are not releasing such costs." (FSA § 3.13.) Plaintiffs also confirmed on the record before Judge Scott that "the[ir] fee motion will seek not more than $1,750,000 in attorneys' fees" and "no m[ore] than $5,000 each for incentive awards." (Petti Decl. ¶ 46; Sovereign Ex. App'x, Ex. I at 10, ECF No. 269-5.)

Now, with their Motion, Plaintiffs seek $3,799,378.50 in attorneys' fees, $84,118.96 in costs, and $35,000 in incentive awards divided among the seven named Plaintiffs. (*See* Mot.)

### III. LEGAL STANDARD

ERISA's civil enforcement provision states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). An award of attorneys' fees under this provision requires a three-stage inquiry.

First, the court must determine whether fees *can* be awarded. A claimant is eligible to seek fees under section 1132(g)(1) if they have achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits . . . ." *Id.* (alteration in original) (quoting *Ruckelshaus*, 463 U.S. at 688 n.9).

Second, once a fee claimant is found eligible, courts in the Ninth Circuit apply the factors articulated in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980), to discretionarily determine whether fees *should* be awarded. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119 (9th Cir. 2010). The "*Hummell* factors" include:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453. No one factor is determinative, and some factors may be irrelevant depending on the case. *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

Relevantly, "where a participant or beneficiary has had to resort to litigation against a plan to recover wrongfully withheld benefits . . . application of the *Hummell*

4

factors must recognize the remedial purpose of ERISA in favor of participants and beneficiaries." *Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Loc. Union No. 675 v. Foster*, 332 F.3d 1234, 1239 (9th Cir. 2003). Thus, courts in the Ninth Circuit apply a presumption that "a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (quoting *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir. 1980), *overruled by Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 971–72 (8th Cir. 2002)).[3] "[A]t a minimum, when an ERISA beneficiary obtains a full recovery of benefits owed or otherwise prevails entirely, the district court abuses its discretion if it denies fees by merely applying the *Hummell* factors, without identifying 'special circumstances' that would render a fee award unjust." *Herrman*, 810 F. App'x at 575 (collecting cases).

Third, where a district court determines attorneys' fees are appropriate, it must then calculate the *amount* of fees to be awarded, using "a two-step hybrid lodestar/multiplier approach." *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id.* at 945–46 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

---

[3] As cited, the Eighth Circuit case upon which the *Smith* court relied has since been overruled in that circuit. *See Martin*, 299 F.3d at 971–72 ("[W]e agree with the overwhelming majority of circuits that have considered this issue and concluded that the presumption should not be employed in ERISA cases. . . . We overrule *Landro's* holding to the contrary."); *see also Herrman*, 810 F. App'x 574, 575–76 (9th Cir. 2020) (VanDyke, Circuit J., dissenting) (positing that the presumptive rule from *Smith* is 'clearly inconsistent' with the Supreme Court's ruling in *Hardt*). Regardless, "[d]istrict courts are, of course, bound by the law of their own circuit." *Zuniga v. United States*, 812 F.2d 443, 450 (9th Cir. 1987). Thus, the Court applies the presumption set forth in *Smith* and reiterated by the majority in *Herrman*.

## IV. DISCUSSION

Plaintiffs seek $3,799,378.50 in attorneys' fees, $84,118.96 in costs, and a $5,000 incentive award for each of the seven named Plaintiffs. (*See* Mot.) The Court addresses each request in turn.

### A. Attorneys' Fees

As mentioned above, an award of attorneys' fees under § 1132(g)(1) requires a three-stage inquiry: (1) whether fees can be awarded; (2) if so, whether fees should be awarded; and (3) if so, whether the requested fees are reasonable.

#### *1. Whether Fees Can Be Awarded*

First, the Court considers whether Plaintiffs achieved "some degree of success on the merits" as to any Defendants. *See Hardt*, 560 U.S. at 245. Plaintiffs contend they achieved total success as to each Defendant because "[a] superior result was impossible," as the settlement required Defendants to jointly and severally pay 100 percent of the Class's unpaid benefit claims pursuant to the Plan. (Mot. 15.)

Allied appears to concede that Plaintiffs achieved *some* degree of success on the merits against Allied. (*See, e.g.*, Allied Opp'n 2 ("Allied will not argue that the settlement reached did not 'benefit' the class that was ultimately approved.").) Accordingly, the Court finds that Plaintiffs are eligible for fees against Allied.

The Sovereign Defendants dispute that Plaintiffs achieved success on the merits against them because: (1) Sovereign admitted liability from the beginning, so it was never at issue; and (2) the Court did not issue any order establishing their liability. (Sovereign Opp'n 17.) They also argue that Plaintiffs achieved "no success at all" against Tessers, Gallagher, and Sharma. (*Id.* at 3, 17.) Specifically, they point out that "Tessers and Gallagher have paid and will pay nothing in settlement." (*Id.* at 3.) They similarly point out that Sharma "has paid nothing in settlement," and Sharma's obligation to indemnify Allied "is secondary to Sovereign's and is unlikely to materialize." (*Id.* at 17.)

The Court notes, first of all, that Sovereign and Sharma have already agreed to be jointly and severally liable for any attorneys' fees awarded against Allied. (*See* FSA § 3.11.) Furthermore, Sovereign admits it "was always ready to accept full liability for its failure to fully fund the [Plan]." (Sovereign Opp'n 12; *but see* Reply 2 ("Sovereign's admission that it was *obligated* to pay the claims was of no value, because it *failed* to pay them claiming insolvency.").) Just because Sovereign capitulated to liability from the start does not mean Plaintiffs achieved no success on the merits. Moreover, it is clear from the record that Sovereign's liability was central to resolution of this case, as "Allied could not [have] settle[d] without Sovereign." (Allied Opp'n 20.)

Gallagher and Tessers are in a different position, however. The Court agrees with Defendants that "Plaintiffs' prosecution of the case against Gallagher and Tessers, and their insistence that these individuals be parties to the settlement was ceremonial, rather than practical." (*Id.* at 20–21 ("Had [P]laintiffs agreed to dismiss Gallagher and Tessers, the negotiations would have progressed in a more efficient manner.").) Indeed, under the SSA, Tessers and Gallagher "were only responsible for paying claims if Allied failed to do so[,] and . . . Allied has already paid all claims." (Sovereign Opp'n 16.) Tessers and Gallager were not parties to the FSA *because* they would not agree to be liable for attorneys' fees, (*see generally* SSA), and no Defendant appears to take any issue with Tessers and Gallagher avoiding liability for attorneys' fees.

Thus, "without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue," *Hardt*, 560 U.S. at 255, the Court finds that Plaintiffs achieved some success on the merits against Allied, Sovereign, and Sharma, but only nominal success against Tessers and Gallagher. Plaintiffs are therefore eligible for an award of fees under § 1132(g)(1) against Allied, Sovereign, and Sharma, but not against Tessers or Gallagher.

### 2. Whether Fees Should Be Awarded

Second, the Court exercises its discretion in deciding whether to award fees in this case. *Simonia*, 608 F.3d at 1119; *Foster*, 332 F.3d at 1239; *Herrman*, 810 F. App'x

at 575. Plaintiffs contend that the Court should presumptively grant fees without considering the *Hummell* factors because Defendants agreed to pay 100 percent of the Class's unpaid benefit claims pursuant to the Plan. (Mot. 15.) Defendants acknowledge they paid 100 percent of all benefit claims, but they argue that Plaintiffs did not prevail on every *cause of action* brought in this case. (*See* Allied Mot. 2–3.) This distinction is mostly inconsequential, however, because the presumption of a fee award applies "when an ERISA beneficiary obtains a full recovery of benefits owed *or* otherwise prevails entirely." *Herrman*, 810 F. App'x at 575 (emphasis added). Here, both sides acknowledge that Plaintiffs obtained a full recovery of benefits owed to class members under the Plan. Accordingly, Plaintiffs "should . . . recover an attorney's fee unless special circumstances would render such an award unjust." *Smith*, 746 F.2d at 589; *see also Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994) ("When this result is evident . . . it is unnecessary for the court to engage in a discussion of the factors enumerated in *Hummell* . . . .").[4]

Significantly, Allied correctly notes that a special circumstance does exist. (*See* Allied Opp'n 6.) Plaintiffs agreed to—and represented to the Court that they would—limit their request for attorneys' fees to $1.75 million. (FSA § 3.10; Sovereign Ex. App'x, Ex. I at 10.) A plaintiff's agreement, "through a settlement or consent order[,] . . . to compromise his right to pursue subsequent fees" constitutes a "special circumstance[] justifying the denial of a fee award." *See Maloney v. City of Marietta*, 822 F.2d 1023, 1027 (11th Cir. 1987). Plaintiffs now argue that they merely agreed to limit the *lodestar* to $1.75 million, (*see, e.g.*, Mot. 2 n.1), but that is not what the record shows. The FSA is clear. (FSA § 3.10 ("[Plaintiffs] will file a Motion . . . for reasonable attorneys' fees (not to exceed $1.75 million) . . . .").). Plaintiffs'

---

[4] The Court notes, regardless, that a balance of the *Hummell* factors would also result in a decision to award fees. Although the Court does not find Defendants acted in bad faith, Defendants did actively defend in this action. Additionally, Defendants appear capable of paying a fees award of no more than $1.75 million; a fees award would deter others from failing to fund ERISA plans; Plaintiffs sought to benefit all class members; and the relative merits of the parties' positions appear, at worst, neutral. *See Hummell*, 634 F.2d at 453.

8

representation to the Court was clear. (Sovereign Ex. App'x, Ex. I at 10 ("[T]he fee motion will not seek more than $1,750,000 in attorneys' fees.").) Under no circumstances should the award of attorneys' fees exceed $1.75 million.

### 3. *Calculation of Attorneys' Fees*

Third, having determined that an award of fees is both available and appropriate (with a maximum award of $1.75 million), the Court must now calculate the amount of fees to award Plaintiffs. *Welch*, 480 F.3d at 945. This involves "a two-step hybrid lodestar/multiplier approach." *Id.* "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)). "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at 946 (quoting *Hensley*, 461 U.S. at 434). "In addition to setting the number of hours, the court must also determine a reasonable hourly rate, 'considering the experience, skill, and reputation of the attorney requesting fees.'" *Id.* (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)). "Second, in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Id.* (citing *Van Gerwen*, 214 F.3d at 1045.)

Here, Plaintiffs' counsel "took this case on a pure contingency basis, [and] it has not agreed to an hourly rate with the Plaintiffs." (Mot. 19.) Regardless, Plaintiffs' counsel seeks attorneys' fees based on the following chosen rates and reported hours:

| Timekeeper (Law School Graduation Year) | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| A. Friedenberg (1999) | 1247.3 | $800 | $997,840 |
| J. Eldredge (2005) | 958.6 | $700 | $671,020 |
| A. Rapp (2011) | 775.9 | $650 | $504,335 |

| | | | |
|---|---:|---:|---:|
| L. Lentz (paralegal) | 599.7 | $290 | $173,913 |
| D. Menor (paralegal) | 87.9 | $290 | $25,491 |
| W. Reilly (1994) | 200.4 | $800 | $160,320 |
| **TOTAL** | **3869.8** | | **$2,532,919** |

(Friedenberg Decl. ¶ 38.) The Court considers this request below.

### a. *Reasonable Hourly Rates*

To determine whether hourly rates are reasonable, courts consider whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Trs. of S. Cal. IBEW–NECA Pension Plan v. Electro Dynamic Servs.*, CV 07–05691-MMM-PLAx, 2008 WL 11338230, at *5 (C.D. Cal. Oct. 14, 2008) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant community is the district in which the adjudicating court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The party seeking attorneys' fees may satisfy its burden to show that the proposed hourly rate is reasonable by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing case law examples of the relevant community rate. *See id.* at 980–81. "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

First, the Court focuses on whether the requested *attorney* rates are reasonable. In support of their counsel's requested rates, Plaintiffs submit, among other things, (1) declaration testimony by their expert witness, Richard Pearl, (2) declarations by Defendants' counsel, previously filed in another lawsuit,[5] and (3) various case law. (*See*

---

[5] The declarations were filed in *Harlow v. Metropolitan Life Insurance Company*, Case No. 5:17-cv-02091 JGB (SPx). (*See* Decls. of Russell Petti & Glenn Kantor ("*Harlow* Decls."), ECF No. 266-2.)

Reply 15; Decl. of Richard M. Pearl ISO Mot. ("Pearl Decl."), ECF No. 266-3; *Harlow* Decls.) Pearl's declaration consists of a full 274 pages (with exhibits), and it does establish that some highly experienced lawyers at prestigious and expensive law firms in this District command rates comparable to $800 per hour. However, Pearl's declaration fails to identify which of the myriad cases cited, if any, are comparable to the present action in terms of complexity or level of attorney skill and experience required. For that information, the Court must turn to the other evidence submitted by Plaintiffs: the declarations by Petti and Kantor in an another ERISA case. (*See Harlow* Decls.) Those declarations submitted by Sovereign's counsel in *Harlow* (which were submitted in *this* action by Plaintiffs) tend to support a finding that $650 per hour is a reasonable rate for successfully prosecuting an ERISA case.

In opposition, Allied submits expert testimony suggesting that a more appropriate hourly rate for Plaintiffs' counsel would be between $300 and $650, depending on skill and experience. (Decl. of Charles Sims ("Sims Decl.") ¶ 59, ECF No. 270-5.) The Court agrees, as the issues in this action were considerably less complex than the issues in a typical ERISA case. In this case, the only apparent barrier to resolution was that the Defendant admitting liability had no means to pay, and the Defendant with means to pay arguably had no liability. Ultimately, the parties settled when Sovereign (not Plaintiffs) convinced Allied that it would be indemnified. (*See* Decl. of Rinat-Klier Erlich ("Erlich Decl.") ¶ 24, ECF No. 270-1.) Thus, considering the evidence submitted by the parties regarding comparable hourly rates in the community, and based on the Court's knowledge and experience of such prevailing rates for similar services of lawyers of reasonably comparable skill, experience, and reputation, the Court finds $500 is a reasonable hourly rate for Friedenberg and Reilly, $400 is a reasonable hourly rate for Eldredge, and $350 is a reasonable hourly rate for Rann.

Next, the Court considers the reasonableness of $290 per hour for paralegal work. To start, Plaintiffs simply fail to support that $290 per hour is a reasonable rate for the work performed by Plaintiffs' counsel's paralegals in this action. The scant evidence

provided regarding paralegal rates does not appear to relate to any work that is readily comparable to the work performed here. Allied, on the other hand, presents evidence that suggests anywhere between $130 and $190 per hour would be reasonable for paralegal work performed in this action. Having considered the evidence before the Court as well as the Court's own knowledge and experience of the prevailing rates in the community for comparable services, the Court finds $150 per hour to be reasonable for the work performed by Plaintiffs' counsel's paralegals. *See Vecron Exim Ltd. v. Stokes*, No. CV 17-02944-CAS (RAOx), 2018 WL 6168021, at *2 (C.D. Cal. Aug. 31, 2018) (finding "based on [the court's] knowledge of the prevailing rates of paralegals in the Los Angeles area a $135 hourly rate would be reasonable); *see generally Adams v. Compton Unified Sch. Dist.*, No. CV 14-04753 BRO (PJWx), 2015 WL 12748005, at *11 (C.D. Cal. July 16, 2015) (collecting cases from this District approving paralegal hourly rates ranging from $95 to $225).

In short, the Court bases the lodestar on the following hourly rates: $500 for Friedenberg and Reilly, $400 for Eldredge, and $350 for Rann, and a paralegal rate of $150 per hour. Thus, purely based on Plaintiffs' counsel's reported number of hours (3182.2 attorney hours and 687.6 paralegal hours), the lodestar would be $1,481,995. However, the Court must still consider whether the number of hours expended was reasonable.

### b. *Number of Hours Reasonably Expended*

"A district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). "The fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

Defendants contend that Plaintiffs over-litigated this case, and that such aggressive litigation by Plaintiffs was never necessary because Sovereign always conceded liability. Thus, according to Defendants, Plaintiffs should not be rewarded

for needlessly driving up attorneys' fees. (*See generally* Sovereign Opp'n; Allied Opp'n.) Plaintiffs tell essentially the opposite story. Plaintiffs complain that Defendants vigorously defended this action and forced all parties to incur large legal expenses for no reason, as Defendants ultimately agreed to fully cover all of the class members' claims under the Plan. According to Plaintiffs, it was Defendants who drove up attorneys' fees in this case. (*See generally* Mot.; Reply.)

In truth, neither side is so innocent. Both sides contend that most of the litigation was unnecessary; meanwhile, the parties collectively filed over a thousand pages of documents just in connection with the present Motion. This is not a new phenomenon. Plaintiffs had a legitimate reason to prosecute their case against Allied notwithstanding Sovereign's admission of liability, as Sovereign had no ability to pay. Similarly, Allied had good reason to defend its case because Sovereign's admission of liability did not bind Allied. Allied's liability, the central issue in this action, was never decided by the Court because the parties settled. It was Sovereign's promise to indemnify Allied that persuaded Allied to pay the class members' benefit claims. (Erlich Decl. ¶ 24.) Until then, Plaintiffs' case against Allied was far from a sure thing. (*See* Order Granting Stay 2 ("If this case goes to trial while Sovereign remains judgment-proof, Plaintiffs' only chance at recovering will be contingent on the Court finding Allied liable. But Plaintiffs' claims against Allied are much less certain than Plaintiffs' claims against Sovereign.").)

That said, the Court agrees with Defendants that some of Plaintiffs' counsel's claimed hours appear excessive or duplicative. For instance, the evidence shows Plaintiffs' counsel worked to prepare for trial against Tessers and Gallagher *after* settling with Allied, Sovereign, and Sharma. (*See* Decl. of Elaine G. Berman ("Berman Decl.") ¶ 5, ECF No. 270-3.) For obvious reasons already covered above, those hours shall not factor into the lodestar calculation for the fees award against Allied, Sovereign, and Sharma. Calculating that deduction, however, requires some thoughtful

estimation.[6] To start, the Court relies on the unrebutted declaration testimony stating that Plaintiffs billed $60,820 in trial preparation against Tessers and Gallagher. (Berman Decl. ¶ 5.) Notably, that amount is based on Plaintiffs' counsel's *requested* rates, which are considerably higher than what is being awarded. Plaintiffs' counsel *requests* fees at a blended rate of $654.53 ($2,532,919 / 3,869.8 hours = $654.53 per hour). (*See* Friedenberg Decl. ¶ 38.) Based on the *requested* blended rate, the Court estimates that 93 hours were spent preparing for trial against Tessers and Gallagher ($60,820 / $654.53 per hour ≅ 93 hours). However, the Court is awarding fees at a blended rate of approximately $382.96 ($1,481,995 / 3,869.8 hours = $382.96 per hour). At this new, lower blended rate, the Court estimates Plaintiffs' counsel expended about $35,614.28 preparing for trial against Tessers and Gallagher (93 hours * $382.96 / hour = $35,614.28). Thus, the Court reduces the lodestar by $35,614.28, bringing the running total down to $1,446,379.72 ($1,481,995 – $35,614.28 = $1,446,379.72).

Furthermore, the Court notes that Allied's counsel billed a total of 1729 hours for a total of $414,000 in fees, whereas Class Counsel billed a total of 3870 hours for a claimed total of about $2.5 million. (Erlich Decl. ¶ 5; *see* Friedenberg Decl. ¶ 38.) Indeed, this is a great disparity, even accounting for the hours billed by Sovereign's counsel. After poring through the hundreds of pages of filings connected with this Motion, and having easily cross-referenced the parties' storytelling with the evident record, the Court is satisfied that Plaintiffs' counsel excessively litigated this case and unnecessarily required both sides to expend time on needless tasks. The most salient evidence of this is the present request for $3.8 million in attorneys' fees, when Plaintiffs already promised Defendants *and the Court* that such a request would not exceed $1.75 million. Further examples include Plaintiffs' overbroad class definition which

---

[6] Class Counsel submits 150 pages of time entries, with about twelve entries per page, for a total of about 1800 time entries. Rather than tracking and charting each individual entry, the Court "may take into account [its] overall sense of [the] suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.").

resulted in a second round of class certification motion practice, (see Order Denying Class Certification), and the hundreds of pages of unhelpful declarations, exhibits, and objections the Court needed to review in order to thoroughly consider the present Motion. Thus, the Court reduces the lodestar by an additional ten percent ($144,637.97),[7] bringing the lodestar down to $1,301,741.75 ($1,446,379.72 – $144,637.97 = $1,301,741.75).

    c. *Multiplier*

Of course, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Here, both sides request a multiplier.

Plaintiffs ask the Court to increase the lodestar by a 1.5x multiplier because "the results [Plaintiffs] obtained [we]re so total in comparison to that sought at the outset of the suit that the case is in fact exceptional." (Mot. 21.) As Plaintiffs note, an upward adjustment to the lodestar is appropriate in an "exceptional" case. *See Blum v. Stenson*, 465 U.S. 886, 898–99 (1984) (explaining the novelty and complexity of a case are presumably fully reflected in the lodestar); *accord Delaware valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). But while this case was certainly peculiar, the Court does not find it to have been exceptional. Plaintiffs did not face an exceptionally daunting challenge with no expectation of success, nor do Plaintiffs present "specific evidence that the quality of service was superior in light of the hourly rates charged." *See Van Gerwen*, 214 F.3d at 1046. Rather, Sovereign admitted liability from the start, and the parties settled when Sovereign convinced Allied that Sovereign would repay Allied for covering Plaintiffs' benefit claims. These facts do not warrant an upward adjustment to the lodestar.

---

[7] Although the Court explains this ten percent reduction here, the Court also notes that a ten percent reduction need not typically be explained. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (2008).

Defendants ask the Court to reduce the lodestar because Allied only ended up paying about $850,000 in resolution of the class benefit claims. However, "ERISA does not require that attorney's fee awards be proportional to the total recovery," and "district courts routinely award attorney's fees in excess of the ERISA plaintiff's total recovery." *Dragu v. Motion Picture Industry Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1130 (N.D. Cal. 2016) (collecting cases). Moreover, Defendants paid 100 percent of Plaintiffs' benefit claims under the Plan, and "the most critical factor [when considering a multiplier] is the *degree* of success obtained." *Hensley*, 461 U.S. at 436. Thus, a downward adjustment is not appropriate either.

Accordingly, based on the lodestar calculations outlined above, Plaintiffs shall be awarded reasonable attorneys' fees in the amount of **$1,301,741.75**.

**B.     Costs**

Plaintiffs also request $84,118.96 in costs. (Mot. 24.) Plaintiffs' counsel asserts that these costs can be categorized as follows:

| | |
|---|---:|
| Court fees and hearing transcripts | $2,295.48 |
| Deposition costs | $16,957,90 |
| Expert costs | $44,688.00 |
| Copying costs | $1,651.05 |
| Travel costs | $13,942.39 |
| Federal Express and mail costs | $1,844.20 |
| Electronic document processing | $1,188.00 |
| Asset investigation | $6.00 |

(Friedenberg Decl. ¶ 44.)

Defendants contend that Plaintiffs fail to adequately support their request for costs because the only documentation provided by Plaintiffs consists of "a completely disorganized 345[-]page lump [of] various invoices." (Sovereign Opp'n 25.)

Defendants' protests are not persuasive. Although the Court must agree that the lump of disorganized invoices is not helpful, Plaintiffs' counsel also provided a detailed accounting of its costs. (*See* Friedenberg Decl. Exs., Ex. 2 at 139–51.) And although these costs are significant, the Court finds them adequately documented and ultimately reasonable. Thus, Plaintiffs shall be awarded costs in the amount of **$84,118.96**.

### C. Incentive Awards

Finally, Plaintiffs seek seven $5,000 incentive awards, one for each named Plaintiff. (Mot. 24–25.) "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16–03347-BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017). Plaintiffs agreed to limit their request for incentive awards to $5,000 per named Plaintiff, which they have done. (*See* FSA § 3.10.) Moreover, Defendants do not oppose Plaintiffs' request for incentive awards. (*See* Sovereign Opp'n (remaining silent on the issue of incentive awards); Allied Opp'n (same).) The Court finds the request reasonable. Thus, Plaintiffs shall be awarded a $5,000 incentive award for each named Plaintiff, for a total of **$35,000**.

## V. CONCLUSION

In summary, Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED in part**. (ECF No. 266.) Plaintiffs shall be **AWARDED $1,301,741.75 in attorneys' fees, $84,118.96 in costs, and $35,000 in incentive awards** ($5,000 for each named Plaintiff), payable by Defendants Allied, Sovereign, and Sharma (jointly and severally, as set forth in the FSA). Plaintiffs shall also receive post-judgment interest as governed by 28 U.S.C. § 1961(a). The Court will issue a separate Judgment.

**IT IS SO ORDERED.**

March 23, 2021

                                              **OTIS D. WRIGHT, II**
                                     **UNITED STATES DISTRICT JUDGE**